CHARLES G. LANDON et al., as Executors, etc., Respondents, *v.* MARY N. TOWNSHEND et al., Appellants.

Where the owner of the equity of redemption of mortgaged premises becomes bankrupt and his estate has passed into the hands of an assignee in bankruptcy, to cut off the interest of the latter by a foreclosure of the mortgage, he must be made a party defendant to the foreclosure suit in his representative or official capacity, or it must appear in some way on the face of the proceedings that they relate to or affect the bankrupt's estate; the fact that he was made a party individually is not sufficient, nor is it material that he knew the foreclosure related to lands owned by the bankrupt, and that he had no interest therein save as assignee. *Wagner* v. *Hodge* (34 Hun, 524), distinguished and limited.

Although a tenant at will cannot transfer any of his rights to another and his tenancy ends, if he makes such a transfer and surrenders the occupancy, the person taking it coming in as a trespasser only, yet where such person claims the right of occupancy simply by virtue of his assignment, the recognition and allowance of such claim by the owner of the premises makes the occupant a tenant at will the same as his predecessor, and his occupation continues the possession of the owner.

The building of a fence around land does not alone, as matter of law, necessarily constitute a taking of possession, and where the land is at the time occupied and cultivated by a tenant of one claiming title, and such occupancy continues without being interfered with in any degree and without any recognition by the tenant of any right in the builder of the fence as owner or occupant, and when it appears the fence was built without the knowledge of such claimant, a finding is justified that the building was a mere entry, not a termination of his possession.

In an action of ejectment brought by the executors of H. to recover certain lots in the city of New York, these facts appeared: In 1843 W., who was the owner of the premises which were subject to a mortgage

thereon, was declared a bankrupt, and his property passed into the hands of his assignee in bankruptcy. P., the mortgagee, thereafter commenced an action to foreclose the mortgage, to which the assignee, as such, was not made a party. In 1846 a decree of foreclosure and sale was rendered, the premises were sold, and purchased by P., to whom the master in chancery executed a deed purporting to convey the fee. P. entered into and continued in possession until his death in 1855. P. died intestate, and pursuant to a judgment in an action of partition between his heirs the premises were sold, and in 1859 conveyed to H., all of the heirs of P. uniting in the conveyance. Prior to this another action had been commenced by the administrator of P. against the said assignee to foreclose said mortgage, in the complaint in which the facts as to the prior foreclosure and sale and the possession by P. under it were recited. Judgment of foreclosure and sale was rendered and the premises were sold and conveyed to H. At the time of these conveyances to H. the premises were in the occupation of S., he having entered as tenant of P. S. thereafter continued in the occupancy as tenant at will of H. until 1865, when he transferred his occupancy to B., who went in and thereafter occupied the premises in the same manner as S. had done, *i. e.*, cultivating them as a vegetable garden, he claiming no other right or interest than as tenant at will of H., which tenancy was recognized and acquiesced in by the latter. B. died in 1872 or 1873, his widow continued in the occupation of the premises, cultivating it in the same manner, until the death of H. in 1884; in that year defendant took possession. *Held,* the evidence justified a finding that H. entered into and continued in possession from the time of the delivery of the deeds to him in 1859, until his death, he claiming to be the owner and holding the same adversely; and that, therefore, he acquired title by adverse possession.

In 1873 defendant received a deed of the premises from one claiming to own the equity of redemption; in 1875 she built a fence around them, her entry for that purpose being peaceful. It did not appear, however, that H. had any knowledge of this act of defendants; that it interfered in any way with the occupancy; that there was any change in the actual possession, or that the tenants then or thereafter recognized defendant as owner. *Held,* that the erection of the fence was not necessarily a legal, valid taking possession, and so a termination of the adverse possession of H., and the evidence justified a finding that it was a mere entry in opposition to the occupants, and so, not an interruption of the adverse possession.

(Argued October 23, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made April 6, 1891, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee.

This is an action of ejectment brought to recover the possession of certain premises in the city of New York and described in the complaint.

The plaintiffs are the surviving executors of one Benjamin H. Hutton, who died in the city of New York on the 17th day of February, 1884. John N. Whiting, who is named in the will as one of the executors thereof, died on or about the 19th of April, 1885, leaving the plaintiffs sole surviving executors. On the 5th day of September, 1835, Edward Price and his wife conveyed to one John Scudder in fee the premises involved in this action. Scudder at the time gave back to Price a purchase-money mortgage to secure the payment of $1,000. On the 23d of March, 1836, Scudder conveyed these premises to one Ebenezer L. Williams in fee, subject to the mortgage. On the 4th of February, 1843, Williams still being the owner of the premises subject to the mortgage, was duly declared a bankrupt by a judgment of the District Court of the United States in the southern district of New York. William C. H. Waddell was at this time the official assignee in bankruptcy in that district and he became the assignee of Williams. On the 21st day of November, 1845, Price commenced a suit in the Court of Chancery to foreclose the mortgage made by Scudder to him. Neither Williams nor Waddell was made a party to this suit. On the 27th of April, 1846, a decree was therein made for the sale of the premises, which provided that the master should execute to the purchaser a deed thereof, and dispose of the proceeds of the sale as directed. The premises were, on the 8th day of June, 1846, sold under the decree by Philo T. Ruggles, the master in said court, and Edward Price, the mortgagee, became the purchaser at the master's sale. On September 8, 1846, the master executed, pursuant to the decree, a deed and delivered the same to Price, purporting to convey the fee in the above mentioned premises. Price entered into possession of the premises, and as is found by the referee continued in posses-

sion until his death, which occurred on the 26th day of June, 1855. He died intestate and left six children as his sole heirs at law. On the 23d of February, 1858, one of the sons commenced an action in the Supreme Court in the county of New York against the other children and heirs at law of Price for, among other things, the partition of the premises in question among them as such heirs. Such proceedings were had in the action that a judgment of partition and sale of the premises was entered on the 17th of June, 1858, and on the 10th of August, 1858, a part of the premises described in the complaint was struck off to Benjamin H. Hutton, and the remainder was sold to one Cushman, who afterwards assigned to Hutton. On the 22d of March, 1859, the referee appointed in said judgment conveyed all the premises in question to Hutton. On the 22d of March, 1859, all of the heirs at law of Edward Price, with their respective wives and husbands, united in the execution and delivery to Hutton of a deed in fee simple of the same premises.

On the 1st day of December, 1858, one William Coulter, as administrator of the estate of Edward Price, deceased, commenced an action in the Supreme Court against Rhoda Williams, the widow of Ebenezer L. Williams, and William C. H. Waddell, who were the only defendants therein, for the purpose of foreclosing the mortgage already spoken of, made by Scudder to Price. At this time Rhoda Williams was dead. The complaint in this action among other things set forth the fact that a suit had theretofore been commenced to foreclose the same mortgage, but that neither Williams nor Waddell had been made a party to it, and that a decree had been therein made and the premises sold to Price, who received the deed from the master and entered into possession of the premises under the deed, and had remained in possession up to the time of his death, and that the plaintiff, the administrator, had remained in possession since his death. Judgment of foreclosure and sale in that action was obtained on the 31st of December, 1858, and on the 28th of January, 1859, the premises were sold to one Gordon, who on the same day

assigned his bid to Hutton, to whom the referee executed a deed dated January 28, 1859.

At the time of the execution of these three deeds just above referred to, the premises mentioned in them were in the actual occupation of Frank Surgent as tenant, and he had been in occupation of the premises either as sole tenant, or jointly with others, of Edward Price during his life, and after his death as tenant of his heirs until the conveyance of the premises to Hutton, as above described. The finding of the referee as to the character of the tenancy and occupation of the premises by Surgent after the death of Price was excepted to by the defendants' counsel as wholly without evidence to support it.

The referee also found that "under the three deeds to him, Benjamin H. Hutton entered into the possession of the said premises and continued in possession thereof until his death, and that during all said period, from the delivery of said deeds to him in 1859, until his death, said Benjamin H. Hutton claimed to be the owner of said premises and held the same adversely to all other interests." To this finding defendants' counsel also duly excepted as founded upon no evidence.

The referee also found that Edward Price entered into the possession of the premises under the master's deed in chancery on December 8, 1846, and continued in possession until his death on the 26th of June, 1855, and during all said period Edward Price claimed to be the owner of said premises and held the same adversely to all other interests. The referee further found that upon Edward Price's death his heirs at law came into possession of these premises and continued in possession until the same were conveyed to Benjamin H. Hutton by the three deeds to him from the referee in partition, from the heirs of Edward Price and from the referee in the foreclosure proceedings of *Coulter Administrators* v. *Waddell*, and that during all that period the heirs of Edward Price claimed to be the owners of the premises and held the same adversely to all other interests. Counsel for defendants also excepted to these findings of fact as without evidence to support them. The referee found that the plaintiff's had established

title to the premises in question and gave judgment accordingly. This judgment was affirmed at General Term, and from the judgment of affirmance the defendants have appealed here.

*John Townshend* for appellants. The questions in the case are *res adjudicata.* (*Landon* v. *Townshend,* 112 N. Y. 93.) Hutton never acquired any title to the premises in question, by adverse possession or otherwise. (*Landon* v. *Townshend,* 112 N. Y. 98; *Culver* v. *Rhodes,* 87 id. 353; *Stevens* v. *Hauser,* 39 id. 302; *Jackson* v. *Waters,* 12 Johns. 365; *Hart* v. *Bostwick,* 14 Fla. 178; *Bedell* v. *Shaw,* 59 N. Y. 50; *Smith* v. *Townsend,* 25 id. 481; 1 R. S. 644, § 3; *Moore* v. *Appleby,* 108 N. Y. 241; *Winslow* v. *Clark,* 47 id. 263; *Mills* v. *Mills,* 115 id. 86; *Holridge* v. *Gillespie,* 2 Johns. Ch. 20; *Bedlow* v. *N. Y. F. D. D. Co.,* 112 N. Y. 288; *Trim* v. *Marsh,* 54 N. Y. 607; *Peck* v. *Mallams,* 10 N. Y. 544.) The heirs of Edward Price never had any estate in said mortgaged premises, nor the right to the mortgage. (*Trim* v. *Marsh,* 54 N. Y. 603; *Kortright* v. *Cady,* 21 id. 364; *Winslow* v. *Clark,* 47 id. 261; *Ayman* v. *Bill,* 5 Johns Ch. 570; *Lockman* v. *Rielly,* 95 N. Y. 70; *Valentine* v. *Belden,* 20 Hun, 537; *Cook* v. *Ryan,* 29 id. 249; *Clarke* v. *Clarke,* 8 Paige, 152; *Schoonmaker* v. *Van Wyck,* 31 Barb. 457.) The heirs at law of Edward Price never had possession of said premises. (1 Hilliard on Real Prop. 82; *Wood* v. *Squires,* 1 Hun, 483; *Pollock* v. *Pollock,* 71 N. Y. 137; *Bedlow* v. *N. Y. F. D. D. Co.,* 112 id. 263.) As Hutton commenced his adverse holding in January or April, 1859, he could not establish a title by adverse possession except upon a continued adverse possession of twenty years from those dates. It is not pretended he had any such possession. (Code Civ. Pro. §§ 369, 370; *Thompson* v. *Burhans,* 61 N. Y. 70; *Harris* v. *Frink,* 49 id. 32; *Reckhow* v. *Schenck,* 43 id. 451; *Doe* v. *Price,* 9 Bing. 356; *Benjamin* v. *Benjamin,* 5 N. Y. 388.) At most Bischoff was tenant at will only, and his tenancy ended with his life. (1 Platt on Leases, 655; *Malley* v. *Bruden,* 86 N. C. 259; *Stevens* v. *Hauser,* 39 N. Y. 302;

*Bliss* v. *Johnson*, 94 id. 242.) If Hutton's possession had continued until 1875, it was then interrupted by defendant Townshend taking possession and enclosing the premises with a substantial fence. (*Poignard* v. *Smith*, 6 Pick. 178; *Worssam* v. *Vandenbrande*, 17 Wkly. Rep. 33.) In order that Hutton's possession should ripen into a title it was necessary that it should be continuous and uninterrupted for twenty years. (Code Pro. § 81; *Cleveland* v. *Crawford*, 7 Hun, 616; *Jackson* v. *Phillips*, 9 Cow. 113; *Malvy* v. *Bruden*, 86 N. C. 259; *Doe* v. *Campbell*, 10 Johns. 477.) Mary N. Townshend showed a perfect title to the premises. (*Lichtenburg* v. *Herdtfelder*, 103 N. Y. 306; *Wiswall* v. *Sampson*, 14 How. [U. S.] 66; *Wayman* v. *Southard*, 10 Wheat. 32; *Lemaster* v. *Keeler*, 123 U. S. 389; *R. G. R. R. Co.* v. *Gomila*, 132 U. S. 478.) Supposing Hutton to have acquired the fee in the premises, the plaintiffs as executors cannot maintain this action. (*Cluff* v. *Day*, 124 N. Y. 195; *Lockman* v. *Rielly*, 95 id. 64; *T. T. Co.* v. *C. R. R. Co.*, 123 id. 37.) The referee erred in granting defendants' motion to dismiss the complaint. (*Merrill* v. *Seaman*, 6 N. Y. 171; *Boots* v. *Washburn*, 79 id. 214; *Van Cott* v. *Prentice*, 104 id. 45; *Rathbone* v. *Honey*, 25 id. 465; *Lockman* v. *Rielly*, 95 id. 67.) Hutton's will gave his estate to his widow, children and legatees until the residue of his estate was ascertained. So far as appears the residue has not yet been ascertained. The residue when ascertained, was given to the executors in trust. But there is not any devise to the executors of the rents, and the estate was in testator's heirs until the residue was ascertained. (*Landon* v. *Bauer*, 38 Hun, 614; *Hobson* v. *Hale*, 95 N. Y. 605; *Cooke* v. *Platt*, 98 N. Y. 35; *Chamberlain* v. *Taylor*, 105 id. 192; *Embury* v. *Sheldon*, 68 id. 236; *Roe* v. *Vingut*, 117 id. 204; *Burke* v. *Valentine*, 52 Barb. 425; *Smith* v. *Post*, 2 Edw. Ch. 523; 1 R. S. 727, §§ 1544, 1545, 1547, 1555; *Hawley* v. *James*, 16 Wend. 171.)

*Joseph H. Choate* for respondents. A perfect record title accompanied with possession, has been shown in the plain-

tiffs. (*Smith* v. *Townsend*, 25 N. Y. 481 ; *Lewis* v. *Smith*, 9
id. 514 ; *Drury* v. *Clark*, 16 How. Pr. 424 ; *Frost* v.
*Koon*, 30 N. Y. 428, 448 ; *Bowen* v. *Wood*, 35 Ind. 268 ;
Jones on Mortgages [3d ed.] § 1473 ; Thomas on Mortgages
[2d ed.] § 792 ; 5 Wait's Pr. 197 ; 1 Abb. Forms, 599, I ; 4
Paige, 84 ; *Kingland* v. *Stokes*, 61 How. Pr. 494 ; *Patterson
Copeland*, 52 id. 460 ; *Beers* v. *Shannon*, 73 N. Y. 297 ; *Still-
well* v. *Carpenter*, 62 id. 639 ; Bliss on Code Pleading [2d ed.]
§ 145 ; 2 Chitty on Pleadings [16th Am. ed.], 3 ; *Cordier* v.
*Thompson*, 8 Daly, 172 ; *Wagner* v. *Hodge*, 98 N. Y. 654 ;
*Chesterman* v. *Eyland*, 81 id. 405 ; *Norton* v. *Boyd*, 3 How.
[U. S.] 426 ; *Jerome* v. *McCarter*, 94 U. S. 734 ; *Landon* v.
*Townshend* 112 N. Y. 98 ; *Carr* v. *Carr*, 52 id. 257 ; Whart.
on Ev. 1153 ; Greenl. on Ev. [14th ed.] 46 ; *Doe* v. *Phelps*, 9
Johns. 169 ; *Clements* v. *Macheboeuf*, 92 U. S. 418 ; *Oldham*
v. *Wooley*, 8 B. & C. 22 ; *Roscommon's Claim*, 6 Cl. & F.
97 ; Sedg. & Wait on Titles, § 789.)   The plaintiffs have
proved a perfect title by adverse possession.   (Code Civ. Pro.
§ 373 ; *Whiting* v. *Edmunds*, 94 N. Y. 309 ; *Bradt* v.
*Church*, 110 id. 543 ; *Bedlow* v. *N. Y. F. D. D. Co.*, 112 id.
263, 287 ; *Church* v. *Schoonmaker*, 115 id. 570 ; Code Civ.
Pro. §§ 369, 373, 1632 ; *Hodgen* v. *Shannon*, 44 N. H. 572 ;
*Burke* v. *Hammond*, 76 Penn. St. 172 ; Whart. on Ev. [2d
ed.] 1332 ; 2 Jones on Mort. 1395 ; *Jackson* v. *Minkler*, 10
Johns. 480 ; *Winslow* v. *Clark*, 47 N. Y. 261 ; *Lockwood* v.
*McBride*, 21 J. & S. 268 ; *Robinson* v. *Ryan*, 25 N. Y. 320 ;
*Miner* v. *Beekman*, 50 id. 345 ; *Shriver* v. *Shriver*, 86 id.
580 ; *Hubbell* v. *Medbury*, 53 id. 98 ; *Hubbell* v. *Sibley*, 50 id.
468 ; *Depew* v. *Dewey*, 46 How. Pr. 445.)   Even if the
plaintiffs and their testator were only mortgagees in possession,
they have a right to defend that possession and recover it from
the defendants who, under worthless deeds and fraudulent
proceedings, wrongfully obtained possession from Bischoff,
who was the tenant or agent of the plaintiffs' testator.
(*Chapman* v. *D.*, etc., *R. R. Co.*, 3 Lans. 261 ; *Murphy* v.
*Loomis*, 26 Hun, 659 ; *Hunter* v. *Starin*, Id. 529 ; *Miner* v.
*Beekman*, 50 N. Y. 343, 344 ; *Simmons* v. *Johnson*, 15 N. Y.

S. R. 613; *Phyfe* v. *Riley*, 15 Wend. 253; *Trimm* v. *Marsh*, 54 N. Y. 599.) The defendants' alleged title is worthless, and even if plaintiffs have failed to prove a good record title, or a title by adverse possession, or a right to recover as mortgagees in possession, still the plaintiffs are entitled to recover as against these defendants, because they have established a prior possession. (*Page* v. *Waring*, 76 N. Y. 469, 473; *Palmer* v. *Morrison*, 104 id. 132–136; 1 R. S. 730; *Peck* v. *Brown*, 2 Robt. 119–133; *Young* v. *Bradley*, 101 U. S. 782; *Stevens* v. *Hauser*, 1 Robt. 50; 39 N. Y. 302; *Kip* v. *Hirsh*, 103 id. 565; *Moller* v. *Tuska*, 87 id. 166; *Pickett* v. *Leonard*, 34 id. 175; *Stuart* v. *Foster*, 18 Abb. Pr. 305; *McLaren* v. *McMartin*, 36 N. Y. 91; *Barry* v. *Lambert*, 98 id. 309; *Baker* v. *Bliss*, 39 id. 74; Penal Code, § 130; *Price* v. *Brown*, 101 N. Y. 669; *Hunter* v. *Starin*, 26 Hun, 529; *Carleton* v. *Darcy*, 90 N. Y. 573; *Christy* v. *Scott*, 14 How. [U. S.] 282; *Whitney* v. *Wright*, 15 Wend. 171; Sedg. & W. on Tit. 718; Whart. on Ev. [2d ed.] 1333; *Murphy* v. *Loomis*, 26 Hun, 659; *Mayor* v. *Carleton*, 113 N. Y. 284; *Thompson* v. *Burhans*, 79 id. 93.) The motion to dismiss the complaint was properly denied. (*Landon* v. *Bauer*, 23 Wkly. Dig. 95.)

PECKHAM, J. This case has already been before this court and is reported in the 112 N. Y. 93. The defendants' counsel claims that the case is now *res adjudicata*, as there is no fact existing in the case now before us which did not exist at that time, and that this court then decided upon those facts, the plaintiffs were not entitled to judgment.

The counsel is mistaken in his claim. The only point decided by this court on the former appeal was as to the effect of the attempted foreclosure by the administrator of Price against Waddell, the assignee in bankruptcy, wherein Waddell was made a party, but not in his official capacity. We held that in order to cut off his interest as assignee, it was indispensable that the suit should have been brought against him in his representative or official character, or that it should in some

way appear on the face of the proceedings that they related to or affected the bankrupt's estate. We held that the complaint and proceedings in that foreclosure suit did not comply with this rule, and as the plaintiffs claimed to have made title under that foreclosure suit, the judgment founded upon it could not be sustained.

The counsel for the plaintiffs asks us upon this hearing substantially to review and reverse our former determination upon this point, and he insists that the case as now presented differs in material respects from that which was presented before, and that upon those differences it should be held that the interest of Waddell, the assignee in bankruptcy, was cut off by the foreclosure suit in question. We fail to see that any material change has been made in the facts relative to this question from what they appeared upon the former appeal. It was assumed then, as it appears now, that upon the bankruptcy of Williams his title passed to Waddell, and that Waddell took and held in his official and representative capacity, having no private, individual or beneficial interest of any kind. Whether Waddell knew that the foreclosure in question related to land owned by his assignor, Williams, did not appear upon the former appeal, but that fact we held to be immaterial. We so regard it now. It does not now, any more than on the former appeal, appear on the face of the proceedings that they related to or affected the bankrupt's estate.

Our attention, however, is now called to the case of *Wagner* v. *Hodge*, reported in 34 Hun, 524, and affirmed in this court, without an opinion, in 98 N. Y. 654. It is claimed by the counsel for the respondents that the principle decided in that case is applicable here, and that inasmuch as the assignee in bankruptcy had no other interest than as such assignee, the judgment in the foreclosure suit effectually cut that off. What was really decided in the case in Hun regards the rights of a *bona fide* purchaser of real estate. The learned judge in the course of his remarks said that probably the rights of the assignee were cut off by the judgment in foreclosure in that case; but the effect of such judgment was not directly decided.

The affirmance of the case in this court, without an opinion, of course, did not affirm more than was actually decided below. We see no reason to reverse our former ruling and, therefore, are brought to a consideration of the other facts in the case.

It is claimed by the learned counsel for the defendants that the circumstances under which Edward Price entered into possession of the premises in question, under the master's deed in the first foreclosure proceedings of *Price* v. *Scudder*, rendered his possession that of a mortgagee in possession and hence he did not inaugurate a possession adverse in its nature to the mortgagor or those claiming through him. He urges that the possession of Price being that of a mortgagee in possession, the mortgagor or his assignee had the right at any time within ten years of the entry of the mortgagee, to bring an action to redeem the property by paying the amount due on the mortgage, and that before the ten years elapsed Price, the mortgagee in possession, died. It is then urged that there is no evidence that the heirs at law of Price took possession, but that the evidence is uncontradicted that his administrator Coulter did take such possession, and that while in possession he commenced an action to foreclose this very mortgage, and the complaint in that action was an admission that the mortgage existed and was a lien upon the premises covered by it ; and hence the period of possession by the administrator cannot be added to that of the mortgagee in possession, Price, in order to make out the necessary ten years for the limitation of an action on the part of the mortgagor or his assignee to redeem the premises from the lien of the mortgage by paying the amount due thereon. In this way the defendant claims to have shown that up to the time of the giving of the deed to Hutton in 1859, upon the sale under the second foreclosure, no adverse possession had in fact been maintained, and that it is only from the time when that deed was delivered, in January, 1859, or when the other deeds from the heirs of Price to Hutton, and from the referee in the partition proceedings to Hutton were delivered, which delivery was in April, 1859, that it can be said that the adverse possession on the part of Hutton really com-

menced.   And it is claimed that the finding of the referee that Hutton from 1859 down to the period of his death in 1884, remained in possession of the premises, claiming adversely to all interests, is without evidence, and the exception on that ground is well taken.

If it can be shown that there is any evidence to support the finding of the referee as to the adverse character of the possession of Hutton from 1859 to 1884, continuously under a claim of title, the judgment must be affirmed without considering the various questions which the counsel for the defendants has so ingeniously presented, arising out of the facts already detailed, and occurring between 1835 and 1859.   The evidence upon the question of adverse possession since 1859 shows that Louis and Frank Surgent entered into possession and occupation of the premises in question in 1853, as tenants of Price, the then mortgagee in possession, and that they remained there until the death of Price in 1855 and subsequently to that time and until the spring of 1858, when Louis Surgent sold and transferred to Frank whatever interest he had in the premises.   Whether between 1855 and 1858 the Surgents were tenants of the heirs of Price, or took under the administrator of Price it is unnecessary on this branch of the case to say; but at any rate Frank Surgent was in the occupancy of these premises at the time when Hutton took his deed in 1859, and from 1859 to 1865 Hutton was in possession of the premises (by this same Frank Surgent as tenant), and claiming to own the same in fee under the deeds above mentioned.

Frank Surgent testified distinctly that he did not pay any rent after his brother left, which was 1858, and that Mr. Hutton said it would not be necessary to pay any more rent; he was satisfied with the witness' occupation of the land.   Upon the evidence in the case it cannot be disputed that Surgent up to the time that he left in 1865 recognized Hutton as his landlord and his occupation of the premises was under Hutton.   Thus from 1859 up to 1865 there is beyond any question an adverse possession on the part of Hutton proved in this case and counsel for defendants concedes such to be the fact.

In 1865, while he was such tenant of Hutton, Surgent transferred his occupancy of the premises and all the rights that he had to one Bischoff, who paid him and who thereupon went into the occupancy of the land in the same way that Surgent had occupied it, which was as a vegetable garden. It may be assumed that Surgent was only a tenant at will, and it is at this point that the learned counsel for the defendants claims the adverse character of the holding of Hutton was determined, and he founds it upon the principle that a tenant at will cannot transfer any of his rights to an assignee or a transferee; that his tenancy is of such a nature that it necessarily ends the moment he makes a transfer and surrenders the occupancy and the person who comes in is a trespasser and does not hold under the former landlord. This is beyond question true, provided the landlord choose to so regard it; but here is the fact that Surgent assumed to transfer all the rights which he had, including the right of occupation, to Bischoff, who assumed to come in and occupy under the same title, and none other, that Surgent had. In other words, he assumed to come in as a tenant at will in place of Surgent, and his tenancy was recognized and acquiesced in by Hutton from the time he took such occupation of the premises.

It has never been held that the owner of property could not if he chose recognize the occupation of his property by another, who claimed to come in under an assignment by one who was himself nothing but a tenant at will. By the claim on the part of the assignee of the right of occupancy, simply by virtue of his assignment, and in no other way and by no other means, the recognition of such claim and its allowance by the owner would constitute such person a tenant at will the same as his predecessor. We think the evidence, therefore, is sufficient to show that the assignment by Surgent to Bischoff of his rights in the premises and the entry of Bischoff thereunder and the acquiescence in such entry by Hutton, constituted Bischoff the tenant of Hutton, and his occupation continued the possession of Hutton until such occupation ceased.

The evidence shows that Bischoff died about the year 1872 or 1873. The defendants claim this is another break in the possession by Hutton, and it is alleged that there is no proof of any further possession on the part of Hutton from that time on. The referee finds that after Bischoff's death his widow continued in possession of and cultivated the premises, holding them under Hutton until the defendant, Mary N. Townshend, took possession of the premises, the said widow Bischoff having meanwhile married one Greb. The referee found that the defendant, Mary N. Townshend, took possession of the premises on or about the 1st day of May, 1884, when the defendant, Francis G. Wieck, entered thereon as her tenant. This finding as to the tenancy by Mrs. Bischoff is also excepted to by the counsel for the defendants as wholly without evidence. The evidence is that Bischoff remained in occupation of the premises until he died, using the premises for the cultivation of vegetables and nothing else, and after he died his wife continued in occupation of the premises, and in the language of the witness, " ran it the same as her husband had done." She continued this for about a year and then married one Greb, and they continued to cultivate the land in the same way that Bischoff had done down to 1883 or 1884, when they left and Wieck, the florist, came on. Under these circumstances we do not think that it can be said as matter of law that neither Mrs. Bischoff nor her husband Greb occupied the premises as tenants of Hutton. The land at that time was comparatively remote from the settled portion of the city. It was not built upon, and during the time of tenancy of Surgent, and up to the time of the death of Bischoff, it had been used as a market garden for the cultivation of vegetables, and in recognition of the paramount rights of Hutton. The continuance of the same kind of a tenancy by the widow of Bischoff might well be inferred from her continuing to occupy the land in the same way that her husband had done, and such an occupation under the circumstances would not necessarily be of such a character as the law denominates a trespass.

From all the facts, the referee or jury might find Mrs. Bischoff to have been a tenant and her rights subordinate to the paramount rights of Hutton. And we think the same may be said in regard to the continuation of the tenancy after her remarriage. The evidence is that the occupation continued of the same nature as during Bischoff's life-time, and that the land was cultivated in the same manner and for the same purpose up to the time when Greb and his wife left the premises.

Considering the fact that Edward Price had been in possession of the premises from 1846 until his death, and that his heirs claimed to be in possession from the time of his death until the sale by the referee in the partition suit between such heirs, and that upon that sale Hutton became the purchaser and went into possession, claiming title in fee, and continued so confessedly until 1865, when these various tenants succeeded each other, as already stated, we cannot say as matter of law that there was no evidence to sustain the finding of the referee that Mrs. Bischoff, after her husband's death, continued as tenant of Hutton in occupation of the premises until she left in 1883 or 1884.

There is another fact which the defendant confidently relies upon as breaking the continuous character of the adverse possession on the part of Hutton. The referee finds that on the 10th of January, 1873, Mary N. Townshend, the defendant, received a deed from George Law and his wife, purporting to convey the premises in question, and she claims that Law had become the owner of the equity of redemption in the premises owned by Waddell, as assignee in bankruptcy of Williams. The referee also finds that in 1875, defendant Mary N. Townshend built a fence around the premises in question, and that her entry thereon for the purpose of building it was peaceable, but there was no proof that Hutton had any knowledge of it. This entry by the building of the fence is claimed by Mrs. Townshend to constitute a termination of the possession by Hutton, and the commencement of her own. Building a fence around a lot may, under some circumstances, constitute a taking of possession of such lot, but we cannot say that in

all conceivable circumstances such act does necessarily in law constitute such taking possession.

In this case, we have the fact testified to that from the time Hutton took his deeds of these premises, up to the time when Greb and his wife left them in 1883 or 1884, they were in the actual occupation of some one other than the defendant Townshend.   In other words, it appears that Surgent occupied and cultivated the premises as Hutton's tenant until 1865 ; that Bischoff then went in and cultivated the premises in the same way and in the same character as Hutton's tenant, until his death in 1872 or 1873 ; that Mrs. Bischoff continued the occupation and cultivated the premises in the same way until she married Greb, and that she and Greb continued the occupation and cultivation of the premises until they left, as stated. The building of the fence does not appear to have interfered in any degree with the occupation of the premises, as they had been theretofore occupied, and there is no proof that by the building of the fence the slightest change in the actual possession of the premises was accomplished ; and it does not appear that Hutton was even aware of the building of the fence. There is no proof that any of these tenants ever by the slightest act recognized defendant Townshend as the owner or in any way as an occupant of the premises.   Now, under these circumstances, it was a question whether this act of the defendant was a mere entry upon the land in opposition to the occupants and not recognized by them, or whether it amounted to a taking possession thereof.   It may be conceded that anything which amounts to an actual taking possession of property, a substantial assertion of right accompanied by the actual possession and occupation of the property, exclusive in its nature, would amount to the breaking of the adverse possession then running, and would render it necessary to commence it anew.   But here, where the evidence shows that the occupation of the other party continued through this building of the fence and in spite of it, the same as it was before, and such occupation was by the same parties in the same way and for the same purpose during the whole time of the building

and for years after the destruction of the fence itself, we think that the mere building of the fence under these circumstances was not necessarily a legal, valid termination of the adverse possession on the part of Hutton then in process of maturing.

The case of *Worssam* v. *Vandenbrande* (17 Week. Rep. 53) is not opposed to these views. In that case the possession of the party claiming adversely was broken by the breaking down of a fence which had enclosed the premises, and by remaining on the land for three-quarters of an hour, and by erecting a post on the land with a notice affixed that anyone wanting a lease of the land should apply to the plaintiff. Three days afterwards the post and the notice disappeared, and some years after that the defendant (the above claimant) built on the land. It was held that a period had been put to the adverse possession. The decision was not placed on the mere fact of the breaking of the fence. The land had been and, at the time the fence was broken down, was unoccupied, and the further fact appeared that from the time of the destruction of the fence for five years no act on the land hostile to the title of the true owner occurred. The absence of any such hostile act was alluded to in the judgment as one of the grounds for showing interruption of the adverse possession. After the lapse of five years the defendant, the party who had erected the fence, built upon the land, and the question as put by the court was whether, upon these facts, there was a taking of possession of the premises by the true owner, as opposed to a mere entry. And it was held that, under these circumstances, it was a taking of possession.

In *Bliss* v. *Johnson* (94 N. Y. 235) the break in the possession was of many years duration. It was there said that where the true owner had been dispossessed and the dispossession terminates within twenty years, the possession will be considered as having returned to the true owner, and that to defeat his title the adverse possession must be continuous for twenty years.

Assuming that the dispossession here commenced in 1859, the claim of the defendant is that it terminated in 1875 by the

erection of this fence.   On the contrary, we think that, under the facts developed, the referee had the right to find that the erection of the fence by the defendant was a mere entry, and not a termination of the possession by Hutton.   The referee makes this distinction in his findings, for he finds that the widow of Bischoff continued in possession and cultivated the premises, holding under Hutton until the defendant Mary N. Townshend took possession, which was on or about the 1st day of May, 1884, and he finds that the defendant made an entry upon the land in 1875, and enclosed it with a fence.   Upon all the facts, it is clear that the referee drew an inference that the building of the fence constituted a mere entry, as distinguished from a taking of possession, and upon the facts, we think he was justified in so doing, and we cannot disturb his finding as founded upon no evidence.

Our examination of the case brings us to the conclusion that the finding of the referee that Hutton was in possession of the premises for more than twenty years from 1859, claiming adversely, etc., was based on some evidence, and we cannot in this court disturb it.

We have carefully considered the other questions argued in the brief of counsel for respondents, and we think they have been properly disposed of in the courts below.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.