CONSTANT F. WHITNEY and Others, Appellants, *v.* CONSIDINE INVESTING COMPANY and Others, Respondents.

Second Department, January 13, 1922.

**Real property — Drainage Acts — action to cancel certificate of sale given under Drainage Acts and to determine ownership of award — proceedings resulting in certificate examined — no jurisdictional defects found — certificate held valid — adverse possession cannot be based on tax lease — constructive possession of plaintiffs sufficient to maintain action — mere acquiescence will not create estoppel — no question of title involved in condemnation proceeding — right to bring action to remove cloud on title never barred by Statute of Limitations — certificate presumptive evidence of facts stated — when order presumed to be court order — owner need not join in petition — not necessary to give names of landowners benefited — want of venue in commissioners' oath mere irregularity — any irregularity in connection with treasurer's bond waived — map and survey sufficient — description of land sufficient — not necessary that certificate in terms authorize purchaser to take possession — certificate not invalidated by void provision therein for lease — award — defendant Considine Investing Company entitled to income of award for remainder of term, then corpus goes to plaintiffs' successors.**

In an action to cancel a certificate of sale given under the Drainage Acts (Laws of 1869, chap. 888, as amd.) as a cloud on the title to certain lands and to determine the ownership of an award for a portion of such lands condemned by the State, an examination of the proceedings discloses no jurisdictional defects and the certificate is valid.

Adverse possession under claim of title could not be founded upon the certificate of sale.

The constructive possession following the legal title in plaintiffs was sufficient to enable them to maintain this action.

Mere acquiescence will not create an estoppel *in pais* and prevent plaintiffs from assailing defendants' title or interest under the certificate.

The final order in the condemnation proceeding presents no bar to plaintiffs' right to maintain this action, for no question of title was or could be involved in said proceeding.

The right of an owner in possession to invoke the aid of a court of equity to remove a cloud on his title is never barred by the Statute of Limitations while he remains such owner in possession.

The certificate is made by statute presumptive evidence of the facts stated and it will not avail one attacking it that the record does not show that certain requirements of the statute were not complied with. He must prove that they were not so complied with.

Regardless of the form of the papers, it will be presumed in the absence of proof to the contrary, that the proceeding was a court proceeding and the order a

court order, if at the time of the application there was a term of County Court in session.

The owner of the land is not by the statute required to join in the petition as the statute provides " and any person or persons who shall deem it necessary for the public health " that such lands be drained may present the petition. If necessary, the word " and " may be construed " or " in order to give a reasonable construction to the statute.

It is unnecessary to state the names of the owners who will be benefited by the drainage. The word " affected " as used in the statute applies to the lands necessary to be acquired for the drainage.

The want of a venue in the commissioners' official oath is merely an irregularity which was waived by failure to object.

Any irregularities in filing the treasurer's bond were waived as the parties all proceeded to a final order with full knowledge concerning said bond without objection.

The map and survey was sufficient for it was approved by the County Court, and its determination was affirmed by the General Term on appeal. Any defect in the map was a mere irregularity, and if not then pointed out was waived.

The description of the land in the certificate is adequate as it refers to the map approved and filed and the land may be readily located from it.

The statute did not require that the certificate of sale in terms authorize the purchasers to take possession, hence the objection based on the omission of such authorization was not well taken.

The fact that the commissioners exceeded their authority and undertook to provide in the certificate of sale for a lease and thereafter executed such lease does not invalidate the entire certificate.

The defendant Considine Investing Company is entitled to the income from the award for the remainder of the term named in the certificate of sale, and then the corpus of the award passes to plaintiffs' successors in interest.

APPEAL by the plaintiffs, Constant F. Whitney and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Westchester on the 18th day of February, 1920, upon the decision of the court rendered after a trial at the Westchester Special Term.

*C. W. Ticknor*, for the appellants.

*Charles A. Winter*, for the respondents.

Judgment unanimously affirmed, with costs, on the opinion of Mr. Justice J. ADDISON YOUNG at Special Term.

Present — BLACKMAR, P. J., RICH, KELLY, JAYCOX and MANNING, JJ.

The following is the opinion of the court below:

J. ADDISON YOUNG, J.:

This action is brought to cancel a certificate of sale given under the Drainage Acts as a cloud on the title to certain lands in Yorktown, and to determine the ownership of an award for a portion of such lands condemned by the State.

In 1883 Silas C. Whitney was the owner of the premises in question. On November fifth of that year a petition under the Drainage Act was presented to the county judge of Westchester

county, who thereupon made an order appointing commissioners. A motion was made for the removal of one of the commissioners, which was denied by the county judge for want of power, and Whitney appealed to the General Term which reversed the order of the county judge. (*Matter of Underhill,* 32 Hun, 449.) The commissioners thereafter made and filed their report determining the necessity of such drainage and petitioned the Supreme Court for the appointment of commissioners of appraisal of the easement over the land of Whitney necessary to be acquired. An order was thereupon made on December 12, 1885, appointing such commissioners of appraisal, who thereafter made their report awarding him $225 for the easement taken which was confirmed by an order made June 12, 1886. Pursuant to this order the amount of the award was paid to Whitney and his receipt taken, which is dated August 25, 1886. The drainage commissioners thereafter made and filed their statement of the cost, expense, etc., and levied an assessment upon the land deemed benefited by the drainage, Whitney's assessment being $2,000.

Pursuant to the statute, Whitney appealed to the County Court from the decision of the commissioners as to such assessment, and on January 19, 1889, an order was made by the County Court, granting leave to the commissioners to file the map required by the statute *nunc pro tunc* as of January 11, 1888, within ten days from the date of the order, on payment to the appellant of certain costs and upon such payment and filing the determination appealed from was confirmed. The map was filed January 21, 1889, the costs paid and a receipt of Whitney's counsel therefor taken. Whitney thereupon took an appeal from the order of confirmation to the General Term of the Supreme Court, which affirmed the same. (*Matter of Underhill,* 53 Hun, 633; 6 N. Y. Supp. 716.)

It is asserted by counsel for both parties to this action that Whitney's appeal to the General Term was never prosecuted, but as appears from one report the appeal determined June 28, 1889, was from an " order affirming report of Drainage Commissioners " (53 Hun, 633). The other report states that Whitney " appealed to the County Court from the acts and determinations of the commissioners and from the decision of the County Court sustaining the validity of the proceedings " to the General Term. It is quite evident, therefore, that Whitney did prosecute his appeal and that it was determined adversely to his contention. I am further confirmed in this by referring to the opinion given in both courts; the same question being discussed in both. It also appears that the same counsel who argued the appeal in the General Term (6 N. Y. Supp. 716), on July 25, 1889, filed objections to the taxation

of the costs of such appeal upon the ground that the statute provided that the appeal should be heard as an appeal from an order. However, as Whitney did not pay the assessment the commissioners published notice of sale for November 9, 1889, and sold the land assessed to Edward C. Neil for 999 years. This certificate as subsequently amended is the basis of defendant's claim to the property, for although a lease based upon this was subsequently made, it is of no importance because it is not provided for in the statute.

On February 27, 1895, Silas C. Whitney conveyed his homestead property to his two sons, who are plaintiffs in this action. The description of the property does not include the land in question, but bounds the property conveyed on the east and south by " O'Neal's [O'Neil's] swamp," by which name the land in controversy had come to be generally known.

Edward C. Neil died September 4, 1907, and letters of administration upon his estate were duly issued.

Silas C. Whitney died; and the plaintiffs in this action are his heirs at law.

The defendant Considine Investing Company claims through mesne assignments of the certificate of sale and lease; the other defendants claim interests in portions of the property derived from the defendant Considine Investing Company.

About 1912 a portion of this land was acquired by the State by condemnation proceedings. Commissioners of appraisal were appointed and made their awards. Plaintiffs were parties to the proceeding, and a map was filed by Constant F. Whitney, which showed the premises in question, not as belonging to plaintiff, but as " land of N. Tekulsky (swamp)," and bore this notation: " The location of the boundary between lands of Whitney and lands of Tekulsky, by the courses here shown, is approximate only, there being no definite data or monuments from which this said boundary can be properly located. The courses here shown were assumed for the purpose of computing the area of the Whitney property."

The award was paid to defendant Considine Investing Company upon condition that it give a bond to indemnify the State against plaintiffs' claim.

It also appears from the testimony that many disputes occurred between Constant F. Whitney and Neil as to the location of the boundary line between the properties, but no question seems to have been raised by Whitney that Neil's title or interest was not good. There is also testimony that Neil and his successors in interest exercised various acts of ownership over the premises or

some portion thereof, such as the erection of sale signs, pasturing of cattle, payment of taxes, etc., and that defendant Considine Investing Company also leased and conveyed a portion of the property upon which a one-story building was erected.

The defendants assert the validity of the certificate of sale and of the proceedings upon which it is based; claim adverse possession for more than twenty years; set up the ten- and twenty-year Statute of Limitations and allege estoppel and that plaintiffs are not in possession and cannot maintain the action.

No adverse possession by defendants has been shown. Concededly their only claim of title is under the certificate of sale. They cannot under that instrument claim a fee. Their possession is not, therefore, within the meaning of the Code, adverse or hostile to plaintiffs' title, but is in recognition thereof. It has been frequently held that adverse possession under a claim of title cannot be founded upon a mere tax lease. (*Miller* v. *Warren*, 94 App. Div. 192; affd., 182 N. Y. 539.)

In my opinion the constructive possession following the legal title in plaintiffs, there being no actual hostile occupancy shown, is sufficient to enable them to maintain this action. (*Bliss* v. *Johnson*, 94 N. Y. 235; *Whitman* v. *City of New York*, 85 App. Div. 468.)

I do not think any question of estoppel in the ordinary sense arises in this action; mere acquiescence will not create an estoppel *in pais* and prevent plaintiffs from assailing defendants' title or interest under the certificate. It is also clear that the final order in the condemnation proceedings presents no bar to plaintiffs' right to maintain this action, for no question of title was or could be involved in that proceeding. (See *New York Central & H. R. R. R. Co.* v. *Mathews*, 144 App. Div. 732.) Whether the final order in the drainage proceedings and the order of affirmance of the General Term constitute an estoppel of record or *res adjudicata* is a question which involves the validity of the proceedings and the certificate of sale and will be considered in that connection. Neither can the defendants successfully invoke the Statute of Limitations, for it is well settled that the right of an owner in possession to invoke the aid of a court of equity to remove a cloud on his title is a continuing right never barred by the Statute of Limitations while he is such owner in possession. (*Ford* v. *Clendenin*, 215 N. Y. 10, 16, and cases cited.)

With these preliminary questions disposed of, the remaining question is whether the certificate in question and the drainage proceeding from which it resulted are valid, and if so, the rights of the parties in the land and the award.

The statute which is applicable to the proceeding in question is

chapter 888 of the Laws of 1869,* as amended by various enactments. Section 1 provides that any person owning or possessing swamp lands and desiring to drain the same and " any person or persons who shall deem it necessary for the public health " that any such swamp shall be drained, might present a petition duly verified to the county judge of the county in which such lands lie.

Section 2 provides that the county judge, if satisfied that such drainage is necessary, shall thereupon appoint a commission of three persons, freeholders in the county where the lands are situated, to hear and determine whether it is necessary for the public health that such lands be drained.

Section 3 provides for the making and filing of an official oath, the organization of the commission, appointment of a chairman and treasurer. The original act provided that the treasurer should, when the amounts to be collected by him exceeded $500, give a bond with sufficient sureties to the supervisor of the town to be approved by the county judge for the faithful performance of his duties. A subsequent amendment made in 1886, however, provided that the bond should be to the People of the State of New York (Chap. 636).

Section 4 provides that after notice to the petitioner and the parties named in the petition, in such manner as they shall order, the commissioners should proceed by personal view or otherwise to determine the necessity for drainage.

Section 5 provides that the commissioners file in the county clerk's office their determination and give notice of such filing by publishing at least two times " in some newspaper printed in said town in which the lands are situated, or if there be no such newspaper, then in the newspaper printed in the nearest town thereto," and by mailing a copy of the notice so printed to the address of each person interested in the lands not personally served. It also provided for an appeal to the county judge by any party aggrieved by giving written notice of appeal to the commissioners within ten days after the last publication of notice, and that the county judge should thereupon on motion of either party and on at least ten days' notice to the appellant proceed to hear the appeal and determine the same.

Section 6 provides that if it be determined by the commissioners or the county judge that such drainage is necessary for the public health, the commissioners should cause an accurate survey and a map of the lands to be made showing all the lands proposed to be drained, etc.

Section 7 provides that they shall on completion of such map

---

* Amdg. R. S. pt. 3, chap. 8, tit. 16; 2 R. S. 548, § 1 et seq., as amd.— [REP.

certify the same and cause it to be filed in the county clerk's office.

Section 8 relates to the fees and expenses of the commission and the raising of funds.

Section 9 provides for the payment to the owner of damages for the land taken, and if the commissioners cannot agree that they shall proceed to acquire title to an easement over such lands by condemnation.

Section 10 provides for the making by the commission of a detailed statement of the costs, expenses, land damages and compensations, and that they shall determine the sum to be assessed and apportion the same among the several owners or occupants of lands benefited by the drainage in proportion to the amount of benefit received. It also provides that a copy of such statement be filed in the county clerk's office and that written or printed notice be given to each person whose lands are assessed. It further provides that any person feeling himself aggrieved may appeal from the decision of the commissioners to the court by serving a notice of said appeal within ten days after service upon him of the notice of filing such statement and within ten days thereafter make a full statement of the grounds of his appeal and file a certified copy thereof in the county clerk's office and present the said statement to the court which should thereupon proceed without further delay than such as was necessary to give proper notice to the parties interested to hear and finally determine the appeal.

Section 11 provides that within thirty days after filing the above statement, or if appealed from within thirty days after notice to the commissioners of the final determination of the appeal, they shall levy the assessment provided for and proceed to collect the same, etc.

Section 12 provides for an accounting and audit of the commissioners' collections and disbursements.

Section 13 provides that if any of the assessments are not paid within thirty days after the same shall have been made and demanded from the owner of the land assessed, etc., the commissioners shall make a proper description of the land on which the unpaid assessment is made and cause the assessment and description to be published for six weeks in a paper published in the town, or if none, in one published in the nearest town to the land, together with a notice that if the assessment is not paid with the expense of advertising on or before a certain day designated, not less than six weeks from the first publication, the lands will be sold at public auction to the person who shall take them for the shortest period and pay the assessment, expenses and interest, and that on the day

designated or an adjourned day the premises shall be sold, and upon receiving the money bid, the commissioners shall give the purchaser a certificate of such sale which shall be presumptive evidence of all the facts stated and shall be recorded in the office of the county clerk as evidence of mortgage sales under the statute is recorded, " and the said certificate shall authorize and empower the purchaser therein named, or his assignee (such assignment to be in writing, duly acknowledged, and in like manner recorded) on the first day of April, July, October or January, then next, to enter into and take possession of the said land so sold, and to use, occupy and enjoy the same, with the rights of a life tenant, during the time for which he shall have purchased the same, unless the same shall be redeemed as hereinafter provided."

Section 14 provides for redemption from the sale upon certain terms within fifteen months from the date of sale.

All subsequent sections except section 20 contain provisions not material to the controversy here.

Section 20, which was added by the Laws of 1871, chapter 303, provides as follows: " All the powers and jurisdiction vested by this act, in the county judge or in the county judge and justices of the sessions when associated with such officer, are hereby vested in the County Court of the county in which such swamp lands or some portion of them are situated, and all proceedings heretofore commenced before the county judge or county judge and justices of sessions when associated with such officer and now pending and undetermined, are transferred to and vested in the County Court of the county in which such proceedings were so commenced and pending, with full power and jurisdiction in such court to conduct such proceedings to a final determination subject to the provisions of the act hereby amended.    *    *    *."

Plaintiffs contend that the drainage proceedings resulting in the certificate of sale in question contained many defects, all of which they assert are jurisdictional and render the certificate and defendants' title thereunder invalid.    These defects may be summarized as follows:

1. That the petition by which the proceeding was commenced was addressed to the county judge and the order thereupon was by the county judge and not the County Court, as required by the statute.

2. That the owner of the lands affected did not join in the petition.

3. That the names of the owners of land to be affected (benefited) were not shown.

4. That the oath of the commissioners was void for the reason that it contained no venue.

5. That the treasurer's bond was not given at the time required and when given was to the People of the State of New York and not to the supervisor as required by the statute.

6. That no notice was given to the parties named in the petition before the commissioners made their determination.

7. That notice of filing the commissioners' determination was not given in the manner provided by statute.

8. That no map from an accurate survey was prepared and that the one filed did not comply with the statute.

9. That there is no record proof that a demand was made upon the owner for payment of the assessment.

10. That no proper description of the land was published.

11. That there is no proof that the notice of sale was published for the statutory period or that it was published at all, the affidavit being unverified, and that it was not published in the proper town.

12. That the certificate did not contain an authorization to the purchaser to take possession at the time required by statute.

13. That the certificate provided for a lease after fifteen months which was unauthorized by the statute.

The certificate is made by the statute presumptive evidence of the facts stated. This disposes of some of plaintiffs' objections, for it is incumbent upon them to prove the defects. It is not enough that the *record does not show* that certain requirements of the statute were not complied with. They must prove that they were not so complied with.

The 6th, 7th, 9th and 11th objections above conflict with this principle. In the absence of proof to the contrary, it is presumed that notice was given by the commissioners before making their determination; that notice of filing and proper publication was made; that there was due demand of payment of the assessment and that the notice was properly published for the requisite time and in the town required. It might well be that Bedford was the nearest town containing a newspaper at the time it was there published, and Peekskill at the time of the subsequent publication the nearest town then containing a newspaper.

The original application and the order made thereon were in strict compliance with the language of the statute then in force. It is true that section 20, added in 1871, vested jurisdiction in the County Court, but at the time it was so added no amendment was made to the provisions of the statute requiring applications to be made to the county judge. Indeed, it seems to have been the intent of the Legislature to retain all portions of the statute in their original form so far as they specified the county judge

as the particular judicial officer to conduct the proceedings. The same act which added section 20 to the statute also amended sections 6, 10 and 16, and continued the procedure before the county judge. The apparent confusion thus resulting may, I think, be cleared up by construing the statute as a whole in either of two ways: (1) That the Legislature intended by section 20 that all proceedings under the act should be and have the effect of court proceedings, although conducted by and before the county judge, who was the presiding judicial officer of the County Court; (2) that it did not divest and transfer the power and jurisdiction of the county judge to the County Court, but simply vested that court with concurrent jurisdiction. Under either construction, the procedure here attacked was proper and jurisdiction was acquired. It was not until 1886 (Chap. 636) that the Legislature amended the statute so as to require all proceedings to be in the County Court, or, where the lands were situated in more than one county, in the Supreme Court, and substituted " court " for " county judge." In the proceeding in question all subsequent applications and orders were made in the County Court.

But there is a further answer to plaintiffs' contention. Assuming that the original application should have been addressed to the County Court and that the order made thereupon should have been a court order, the mere form of the papers may be disregarded. If at the time of such application and order there was a term of the County Court in session it will be deemed, in the absence of proof to the contrary, that it was a court proceeding and a court order. (*Aiken* v. *Aiken*, 96 Misc. Rep. 561, 562, and cases cited; *Sweeney* v. *O'Dwyer*, 197 N. Y. 499, 503.) As there is no proof to the contrary, the statutory presumption of regularity arising from the certificate of sale obtains.

The owner of the land is not by the statute required to join in the petition. The statute simply provides that any person owning swamp lands may present the petition, but it also provides " and any person or persons who shall deem it necessary for the public health " that such lands be drained may present the petition. In my opinion that is the correct meaning of the statute. If necessary, the word " and " may be construed " or " in order to give a reasonable construction to this statute. (See *People* v. *Frudenberg*, 209 N. Y. 218, 220, and cases cited.)

It was also unnecessary to show the names of the owners who will be benefited by the drainage. The word " affected " as used in this section clearly means the lands which it will be necessary to acquire for the drainage. The owners or persons who will be benefited by the improvement can only be determined by the

commissioners when the time for making the assessments for benefits arises as provided in the later provisions of the act.

I do not think the want of venue contained in the commissioners' official oath is anything more than an irregularity, which might have been cured if objected to, but was waived by failure to object. I think there is a distinction between an official oath such as required here and the affidavit which is required to be annexed to a tax roll, and which the courts have held must comply with the statute. It seems to me that the oath required by this statute is similar to that required of a referee, a juror or arbitrator, and it has been held that want of such an oath is waived by failure to take timely objection. (See *Collinson* v. *Wier*, 91 Misc. Rep. 501, 504, and cases cited.) I do not, therefore, think that the want of venue on the official oath of the commissioners constituted a jurisdictional defect.

There is no proof in the case that the treasurer's bond was not given seasonably. The statute provides that he shall, when the amount to be collected or received exceeds $500, give a bond. No particular time is mentioned. But in any event if not given at the proper time, it was a mere irregularity which might be waived, and in my opinion was waived, because the parties all proceeded to a final order in the proceeding with full knowledge of the time when such bond was filed and without objection. The fact that the bond was made to the People of the State of New York instead of to the supervisor of the town, is not a defect at all, but was in strict compliance with the statute in force at the time it was given. It is true the original statute required it to run to the supervisor, but under the amendment made in 1886 (Chap. 636) it was provided that the bond should be to the People. As this bond was made and filed in 1889, it was, therefore, in proper form.

I think the map and survey was sufficient. It was before the County Court on the appeal by Whitney from the determination of the commissioners fixing the assessment and was then approved by Judge MILLS (then county judge) and ordered filed *nunc pro tunc* on payment of certain costs to Whitney's counsel, and thereupon the determination of the commissioners was confirmed, the costs were paid and accepted by Whitney's counsel and on appeal to the General Term this order was affirmed as above noted. Any defect in the map was a mere irregularity, and if not then pointed out, was waived.

I think, therefore, that Whitney was clearly concluded as to this defect by the final order, and that the plaintiffs here, his successors in interest, are equally concluded.

I also think the description of the land is sufficient. It refers

to the map filed and approved by the court, and I think under it the land could be readily located.

The objection that the certificate of sale did not in terms authorize the purchasers to take possession at the times mentioned in the statute is not well taken. In my opinion the statute did not require any such statement in the certificate itself. The true meaning and intent of the language used is in my opinion that the certificate of sale to the purchaser should furnish sufficient authority for him to take such possession. If the Legislature had intended to require as a condition of the validity of the certificate that such authorization should be stated in the certificate itself, it would have expressed such intent in clear and appropriate language.

The mere fact that the commissioners exceeded their authority and undertook to provide in the certificate of sale for a lease and thereafter executed such lease, does not invalidate the entire certificate. The provision in question is, of course, void as is also the lease; but no claim is made by defendants under either. As this provision of the certificate may be stricken therefrom and the lease disregarded, I do not see that it is of any importance.

In considering these objections, I have not been unmindful of the general rule that ordinarily statutes of this character are to be strictly construed and that substantial compliance is required to support a certificate of sale. But this statute is somewhat different from those considered in most of the cases cited in plaintiffs' brief. Ordinarily, the assessing officers act without any supervision by higher authority during the course of their proceedings and until their final determination, which is then and not until then, subject to review by the courts. In the statute under consideration, however, practically every step taken was required to have and did have the approval and direction of the County Court. It is also provided in this statute: " The County Court may, at any time, correct any manifest error in any of the proceedings under this act, when such correction shall be in furtherance of justice, and the said court may allow such amendments and make such orders and impose such terms as shall promote the objects of this act, and be equitable to all parties." (§ 14.)

It seems to me in view of these provisions that the Legislature intended a somewhat liberal construction of the provisions of the statute to accomplish the end in view. I apprehend, however, that this would not justify a non-compliance by the commissioners with jurisdictional requirements, but it seems to me that all of the alleged defects pointed out by the plaintiffs were such as might have been, during the course of the proceeding itself, amended upon being brought to the attention of the court by any party claiming

to be prejudiced or affected thereby. By failing so to do the parties in my opinion waived such defects. These defects were, therefore, mere irregularities and not jurisdictional. None of the grounds of objection now asserted were laid as grounds for Whitney's appeal to the County Court from the final determination of the commissioners, although the statute required a statement of the grounds upon which the appeal was based (§ 10), and it was held by the County Court upon such appeal that no objection not stated in the grounds filed would be considered by the court. (See opinion MILLS, J., filed.) The proceeding was begun, Whitney appeared at every stage thereof, contested it bitterly, and a final determination was made, was approved by the County Court and confirmed in spite of opposition by counsel appearing for Whitney; an appeal was taken to the General Term of the Supreme Court and the order of the County Court affirmed. It seems to me quite clear that the commissioners, the County Court and the General Term acquired jurisdiction of the parties and of the subject-matter, and that Whitney and his successors in interest, the plaintiffs here, were, therefore, concluded by the final order in the proceeding. To hold otherwise would be in my opinion in effect to review and reverse the final determination of the County Court in a special proceeding of which it had jurisdiction, both of the parties and subject-matter. I think this court has no such power. Certainly it has no right or authority to set aside or reverse the orders and decrees of the former General Term.

I, therefore, hold that the certificate of sale was valid and it only remains to consider the rights of the parties thereunder.

The statute under which it was made is somewhat unique. It provides that such certificate shall authorize and empower the purchaser therein named or his assignee at the times mentioned in the statute " to enter into and take possession of the said land so sold, and to use, occupy and enjoy the same, with the rights of a life tenant, during the time for which he shall have purchased the same " unless redeemed. The certificate, therefore, gives the defendants and their successors in interest a right to the possession and use of the land for the balance of the term of the certificate, 999 years, with the same rights and privileges which a life tenant would have enjoyed, and at the termination of this estate the land reverts to plaintiffs' successors in interest.

The rights of the parties to the award are similar. Defendant Considine Investing Company is entitled to the income for the remainder of the term, and the corpus of the award then goes to plaintiffs' successors in interest.

The award must, therefore, be paid into court, unless defendant

Considine Investing Company consents to accept a gross sum in lieu of its interest, in which event a computation may be made of the sums to which plaintiffs and defendant Considine Investing Company are respectively entitled.