SAMUEL S. BLISS, Respondent, *v.* ROYAL L. JOHNSON et al., Administrators, etc., Appellants.

One holding the legal title to lands although not actually occupying, will be considered as constructively in possession thereof, unless they are in the actual hostile occupancy of another under a claim of title.

Where the true owner has been dispossessed. if the dispossession terminates within twenty years, the possession will be considered as having returned to him ; to defeat his title the adverse possession must be continuous for twenty years.

One J. held the legal title to the whole of a highway; S., to whose title plaintiff succeeded, took title, in 1837, to a farm adjoining the highway under a deed which by its terms bounded the lands on the north by the center of the highway ; immediately thereafter S. built a fence extending one rod into the highway, along the entire north line of his farm, and he and his successor in title continued to occupy the inclosed strip under claim of title until 1846, when, upon a survey establishing J's title to the whole highway the fence was removed back to the south line thereof, and thereafter no part of it was inclosed. From 1867, when plaintiff purchased and took possession, down to 1875, he occupied a strip of land one rod wide adjoining his farm, by plowing, cultivating and mowing it each year. *Held*, that conceding both of these periods of occupation were hostile in inception and continuous in character and sufficient to initiate a claim to an adverse possession, they did not bar the right of the true owner as there was not a continuous adverse possession for twenty years.

During the period between 1846 and 1867, T., plaintiff's predecessor in title, once a year cut the grass from a small plat of ground in the highway, a row of trees was also planted by him in the highway in 1864, which were within a few years thereafter taken up or destroyed, and he sometimes piled lumber in the highway against his fence. He did not occupy the highway in any other manner. *Held*, that the evidence failed to establish a claim by adverse possession.

The setting out of trees or the building of a sidewalk in a highway by the owner of adjoining lands, as authorized by the act of 1863 (Chap. 93, Laws of 1863), is not such an occupation as can be made the foundation of a claim to title by adverse possession as against the true owner.

(Argued November 28, 1883 , decided December 11, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made September 30, 1881, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This was an action for assault and battery. The defense was that the acts complained of were done by defendants lawfully in defense of their possession.

The case is reported upon a prior appeal, in 73 N. Y. 529.

It appeared upon the trial that the assault complained of grew out of a controversy between the parties who owned adjoining farms in respect to the right to a quantity of hay, which plaintiff had cut on the south side of the highway adjoining his farm. The hay was left by plaintiff to dry; in his absence defendants went into the highway and commenced raking and gathering it into piles for removal, on perceiving which, plaintiff went with his team and wagon to load and carry it away, and the affray then occurred. Defendants claimed that Royal Johnson, one of the original defendants, who died after verdict, owned the land upon which the hay grew, that it belonged to him and his son, the other defendant, and that the alleged assault was committed in resisting plaintiff's attempt by force to prevent its removal.

The further material facts are stated in the opinion.

*M. M. Waters* for appellants. The title to the highway was a proper subject of inquiry in this action. (*Bliss* v. *Johnson,* 73 N. Y. 529.) The legal title to land is presumptive evidence of possession. (Code of Civil Proc., § 368.) If the true owner be in possession of a part of the land, claiming title to the whole, his seizin extends by construction of law to the whole. (3 Wheat. 213; Code of Civil Proc., § 370; *Thompson* v. *Burhance,* 79 N. Y. 93.) While a void deed is sufficient to determine the extent of the possession under it, and to base an adverse holding of lands which are vacant, yet, if the true owner be at the same time in possession of a part of the land, claiming title to the whole, then his seizin extends by construction of law to all the land which is not in the actual possession by inclosure, or otherwise, of the party claiming under the defective title. (4 Wheat. 213; 8 Cranch, 229; 3 Peters, 291; 9 Wend. 311, note; 1 Comst. 528; 71 N. Y. 380; 9 Johns. 167; 1 R. S. 739, § 147; 20

Barb. 429; 39 id. 513; 11 id. 285; 46 id. 211; 71 N. Y. 189; 22 id. 170; 19 Johns. 167; 24 Am. Rep. 430; 2 Wend. 166, 177; 9 Cow. 530, 552; 1 Johns. 155; 5 Cow. 371; Civil Code, §§ 370, 372; 54 N. Y. 377, 387, 631; 44 Barb. 181; 68 N. Y. 459; 44 id. 577; 70 id. 325; 71 id. 380; 9 Weekly Dig. 282; 22 How. 212; 4 Peters, 480.) Taking a deed is not enough to make an adverse possession. (3 Washburn on Real Estate, 128, 129, 136.)

*Wm. J. Montanye* for respondent. The possession and occupation of the *locus in quo* by plaintiff and his grantors as proven, in connection with their deeds, which purported to convey to the center of the road, barred defendant's right of entry, and gave to plaintiff the title. (*Jackson* v. *Todd*, 2 Caines, 183; *Jackson* v. *Ellis*, 13 Johns. 118; *La Frombois* v. *Jackson*, 8 Cow. 589, 619, 620, 618, 609; *Jackson* v. *Walter-mire*, 7 Cow. 353; *Kent* v. *Harcourt*, 33 Barb. 491; *Towle* v. *Remsen*, 70 N. Y. 316; *Despard* v. *Walbridge*, 15 id. 374; *Crary* v. *Goodman*, 22 id. 170, 175–6; *Allen* v. *Welch*, 18 Hun, 226; *Sparhawk* v. *Bagg*, 16 Gray, 583, 585; *Hammond* v. *Zehner*, 21 N. Y. 118; 2 Hilliard's Real Prop. [4th ed.] 294, 289; *Wilklow* v. *Lane*, 37 Barb. 244; *Vanderzee* v. *Vanderzee*, 30 id. 331; *Bradstreet* v. *Clark*, 12 Wend. 603; *Smiles* v. *Hastings*, 22 N. Y. 217; *Peckham* v. *Henderson*, 27 Barb. 307.) The Johnson deed should be construed, and was intended to convey the remainder of land not conveyed to Wattles. The measurements in the Wattles deed are to be controlled by the boundary "to the road," and so they are in the Johnson deed. (2 Hilliard's Real Prop. [4th ed.], 498–499, 524, note *d; Wendell* v. *Jackson*, 8 Wend. 183; *Drew* v. *Swift*, 46 N. Y. 207; *Yates* v. *Van Bogert*, 56 id. 526; 1 Cow. 605; 5 id. 346, 371; 9 id. 661; *Lodge* v. *Barrett*, 46 Penn. St. 485.) The refusal of the court to admit Royal Johnson's testimony as to the conversations between him and Wattles and Williams' agent at the time of the giving of the deeds was proper, as it called for transactions between the witness, a party, and plaintiff's grantor who was dead, or in which

plaintiff's grantor took part. (Code of Civil Proc., § 829 ; *Mattoon* v. *Young*, 45 N. Y. 696 ; *Brague* v. *Lord*, 67 id. 495.)

RUGER, Ch. J. The general principles involved in the disposition of this case were discussed and determined upon the former appeal to this court, reported in the 73 N. Y. Reports ; and need not, therefore, be further considered.

The assault and battery which was the subject of the action took place in 1875 in the public highway which divided the respective farms of the plaintiff and defendants. On the trial each of the parties to the action claimed title to the *locus in quo*, but it was established by the proof, and assumed by the court, that the defendant, Royal Johnson, by virtue of a deed from the owner in 1835 took and from that time down to the date of the affray held the legal title to the whole of such highway.

The plaintiff attempted to establish title to that half of the highway which adjoined his premises, and upon which the affray occurred, by proof of an adverse possession thereof, existing for a period of upwards of twenty years by himself and his grantors. The facts upon which this claim was founded were controverted by the defendants ; and the question as to which of these parties owned the land in dispute was a material one upon the trial of the case. (*Bliss* v. *Johnson*, 73 N. Y. 529.)

The court left it to the jury to determine upon the whole evidence whether the plaintiff had established his right to the premises by reason of an adverse possession ; and to this decision the defendants duly excepted. The defendants also requested the court to affirmatively charge the jury that there was not sufficient evidence of an adverse possession, to authorize them to find that the plaintiff had thereby acquired title to the land in dispute. The court refused this request, to which refusal the defendants also excepted.

These exceptions present the only questions in the case, and their consideration requires an examination of the evidence bearing upon them.

This property being a public highway the public right in it

was obviously inconsistent with a permanent appropriation of any part thereof by either party; and the occupation of it which could be shown by any one was necessarily subject to the right to the use of its every part by the public as a common highway. The necessity of leaving a public road open for the use of the traveling community and which would appear to preclude the occupation of such road in the way in which the ownership of real property is usually manifested, would seem to render it difficult for an individual to establish a right to a highway through an adverse possession, which is generally required to be exclusive as well as continuous.

The plaintiff, however, claims to have done so in this case, and that claim must be examined. The time during which he asserts that he and his grantors had such possession extended from 1837 to 1875, covering a period of thirty-eight continuous years. It may be conceded that his remote grantor, one Surdam, in 1837 took title to the plaintiff's farm under a deed which bounded him to the center of the highway, and immediately thereafter built a fence extending one rod into the highway, on the entire north line of his farm, and from that time to the year 1846, through his remote and immediate grantors, Surdam and Tracy, under a claim of title, continued to occupy and cultivate all of the land within such inclosure.

The undisputed evidence shows that in the year 1846 a survey of the respective farms of the parties herein, by one Boulton, established the fact that the defendant Johnson had the legal title to the whole of the road in question. In the same year Tracy removed the fence referred to back to the southern boundary of the highway, and since that time no part of such road has been inclosed by either of the owners of the adjoining lands.

It may also be claimed from the evidence, and conceded in this argument, that from the year 1867, when the plaintiff purchased and took possession of his farm, down to the time of the affray, that he actually occupied a strip of land one rod wide adjoining his farm in the highway by plowing, cultivating, and mowing it each year of his occupation. Should it also

be conceded that both of these periods of occupation were hostile in their inception and continuous in their character, and sufficient in themselves to initiate a claim to an adverse possession; and to such a possession as would, if continued for a sufficient length of time, have barred the right of the true owner to reclaim his land, it would yet fall short of the evidence necessary to authorize a jury to find twenty years, continuous adverse possession of the premises. It is undisputed that the appropriation of this land by an inclosure and its cultivation was abandoned by Tracy in 1846, and the inference is irresistible that this was done under a belief that he had no valid claim to the land in the highway. During the entire period intermediate the years 1846 and 1867, the lands now owned by the plaintiff were owned and occupied by his grantor, Tracy, and unless the whole or some part of that portion of Tracy's occupation of the highway in question was adverse, the plaintiff's case will have failed for want of evidence of the duration and continuity of the possession necessary to establish his claim. The entire evidence upon this subject was furnished by Tracy himself, and is concisely and fully stated in his own language as follows: " I have not occupied that road myself in any manner excepting to enter once a year to cut a little grass and throw it over my fence, no more than setting out trees and leaving lumber there. The law allowed me to set out shade trees or fruit trees by the side of the road. I think it was after that law was passed that I set them out, and up to that time I had never occupied it for any other purpose except once a year to go over and mow that rich spot there; that was a spot half as big as this room. The public always traveled this road. I never inclosed any portion of it at any time, and I never cultivated it or mowed it in any other way than as I have specified." It also appeared that the trees in question consisted of one row of apple trees outside of the fence, and planted in the year 1864. These trees were all within a few years taken up or destroyed. He further says that he occupied the land between the south road fence and the beaten track " no way more than to leave lumber piled against the fence on the west side of the

gateway." "I took no part in the Boulton survey. I became satisfied that the chains and links did end where Boulton found it. My hope was to see if I could not hold beyond the chains and links, and if there was a mistake in the count I thought I would hold to the bounds." It does not appear that Tracy ever made any actual claim of title to the highway in question at any time; and the whole claim is, therefore, based upon the constructive posession which his actual occupation under a deed which apparently bounded him by the center of the highway indicated.

It is obvious from this evidence that the trees in question were set out in the road, not under any claim of title, but solely by virtue of the privilege conferred by chapter 93 of the Laws of 1863 upon the owners of lands fronting upon highways, to build sidewalks and set out trees along such land in the highway. Such an occupation of land not having been instituted under a claim of title could not be made the foundation of a claim to its adverse possession as against the true owner.

This leaves the plaintiff to depend as the sole ground of his claim to the ownership of the strip of land extending one rod wide and about fifty rods long in the highway north of plaintiff's farm upon the evidence of his grantor that he sometimes piled a quantity of lumber in the road against the fence, near his gateway, and annually mowed and converted the grass growing upon a plot of ground in the road, not exceeding, probably, one or two rods square.

We cannot resist the conclusion that this evidence was totally insufficient to establish a title in the plaintiff to the land in question. While the law authorizes the owner of lands adjoining a highway to use and occupy it in any manner not inconsistent with the right of passage thereon by the traveling public, yet its permanent occupation by inclosure or cultivation is manifestly inconsistent with such right of passage; and no matter how long continued, can certainly never ripen into a title as against the public, whatever may be the rule as to its effect upon the owner of the soil of such highway. The fact,

therefore, that the defendant Johnson did not take and hold the actual occupation of the highway in question does not militate against his title, inasmuch as he had all of the possession of the property in question of which it was legally susceptible. The settled principles of law require courts to consider the true owner as constructively in possession of the land to which he holds the title, unless they are in the actual hostile occupation of another under a claim of title; and this rule is still more imperative in the case of wild and uncultivated tracts or lands which are not legally susceptible of actual occupation and cultivation. (*Doe* v. *Thompson*, 5 Cow. 371; *Thompson* v. *Burhans*, 79 N. Y. 99.) This possession is deemed to continue until there is an actual disseizin and expulsion of the true owner from the land, and when such dispossession terminates, if it does terminate within twenty years, the possession is, by construction of law, considered as having again returned to him who holds the legal title. (*Doe* v. *Thompson, supra; Thompson* v. *Burhans, supra.*)

It would seem to follow that the highway in question must be deemed to have been in the possession of the defendant Johnson at all times during the period in question, when it was not actually occupied by another under a claim of title. The occupation shown by the evidence in this case of the *locus in quo* by Tracy, subsequent to the year 1846, was altogether too trivial in character to support a claim to its adverse possession during that period. It was held in the case of *Wheeler* v. *Spinola* (54 N. Y. 387) that cutting a few loads of grass upon an otherwise unoccupied and uninclosed lot in each year for the space of twenty years would not constitute a sufficient possession to confer title upon the person performing such acts of possession. In *Miller* v. *Downing* (54 N. Y. 631) it was also held that one who was accustomed to have a wood pile upon a vacant lot for thirty years, and had buried potatoes upon it for six years, had acquired no title to the lot by such a possession. The authority of these cases seem decisive of the questions presented upon this appeal.

There has not only been a failure to show a continuous

adverse possession of the premises in question, by the plaintiff or his grantors for the period of twenty years, but the possession of Tracy for the twenty years prior to 1867 was not only insufficient in itself to establish any adverse right, but it was not held under a claim of title such as the law requires.

Much as we regret to disturb a judgment obtained after long litigation, and which seems to be not greatly inconsistent with the merits of the case, regard for settled principles leaves us no alternative but to reverse it.

The judgment should therefore be reversed, and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.