(75 Misc. Rep. 310.)

TRUSTEES OF FREEHOLDERS AND COMMONALTY OF TOWN OF BROOKHAVEN v. DYETT SAND-LIME BRICK CO.

(Supreme Court, Special Term, Suffolk County. January, 1912)

1. ADVERSE POSSESSION (§ 24*)—REQUISITES—ACTUAL POSSESSION.

The occupation of a building each summer for the entertainment of picnic parties for about 10 or 12 years, after which it was abandoned and no further use made of it, did not constitute adverse possession, giving title to the occupant.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 114, 115; Dec. Dig. § 24.*]

2. ADVERSE POSSESSION (§ 8*)—PERSONS AGAINST WHOM TITLE MAY BE ACQUIRED—MUNICIPAL CORPORATIONS.

A municipal corporation cannot, by adverse possession, be deprived of title to lands held as a public highway.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 14, 27, 43–57; Dec. Dig. § 8.*]

3. ADVERSE POSSESSION (§ 8*)—PROPERTY DEDICATED.

Where at a meeting of the freeholders and commonalty of the town of Brookhaven in 1672 George's Neck was laid out to the inhabitants according to every man's allotment "all along by the water side for highways," there was a dedication and acceptance of the land along the shore as a highway, so that adverse possession thereof, even when acquiesced in by the town, could not ripen into title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 14, 27, 43–57; Dec. Dig. § 8.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. ESTOPPEL (§ 62*)—EQUITABLE ESTOPPEL—PERSONS SUBJECT—PUBLIC OFFI-
CERS.

 Since the doctrine of estoppel does not apply to a deed by public officials
of land described as bounded by land of another person, a description in
a lease by a town does not estop it from claiming title to adjoining prem-
ises.

 [Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 151–153; Dec.
Dig. § 62.*]

Action by the Trustees of the Freeholders and Commonalty of the
Town of Brookhaven against the Dyett Sand-Lime Brick Company
to recover possession of land. Judgment for plaintiff.

Leslie A. Davis (George H. Furman, of counsel), for plaintiff.
George E. Darling (Timothy M. Griffing, of counsel), for de-
fendant.

JAYCOX, J. The premises in dispute are a tract of land upon the
shore of Port Jefferson Bay, in the town of Brookhaven, Suffolk coun-
ty, N. Y., between the waters of said bay and the cliff. There is no
question but the premises in question, and all the lands under the
waters of said bay and in the northern part of the town of Brookhaven,
became the property of said town under two royal patents or charters
known, respectively, as the Nicolls patent (dated 1666) and the Dongan
patent (dated 1686), and a certain deed from the Indians. Roe v.
Strong, 107 N. Y. 358, 14 N. E. 294; Hand v. Newton, 92 N. Y.
91; Trustees of Brookhaven v. Strong, 60 N. Y. 71. At a town meet-
ing held September 26, 1672, "it was also voted and agreed upon that
George's Neck shall be laid out to the inhabitants according to every
man's allotment and six pole to lay common all along by the water side
for highways." The evidence, I think, clearly indicates that the prem-
ises in question are on George's Neck. In 1753 it was voted and
agreed that the lots laid out on the sound and harbors should extend
to the bottom of the cliffs, including the cliffs to the bottom, and that
all persons owning said lots should be entitled to the same to that ex-
tent. It is not disputed that the land upon this neck, except the beach
or space at the foot of the cliffs, is the subject of private ownership.
The town still owns the lands under the waters of the bay. If the
town has not been divested of title by adverse possession or erosion,
it still owns the land at the foot of the cliffs, as the defendant makes
no title under the patents.

The evidence as to gathering seaweed upon it is so general in
character and so indefinite as to quantity as to amount to practically
nothing. The same may be said as to the water fences claimed to have
extended from the cliff to the water. Only one witness testified as to
them, and he said they were there several years, and apparently cattle
only went on the beach when they got out of the lots.

But there is another piece of evidence strongly indicative of adverse
possession. In 1885 James Van Brunt, then the owner of the upland,
made a lease of two acres of land and the shore, which, as I under-
stand the description, embraced the premises in suit, to the Bridge-

port & Port Jefferson Steamboat Company. Under this lease, the lessee entered into possession and built a building known as a pavilion for the entertainment of picnic parties or excursions. This building remained upon the premises until 1906, a period of 21 years. This lease was dated July 1, 1885. On the 7th day of July, 1885, the plaintiffs executed a lease to the same company for "one certain piece of land under water on the west side of Port Jefferson Bay, 'known as California,' said hereby granted premises to extend into the bay two hundred feet from low-water mark, for the purpose of building a dock, and to include the shore frontage of forty rods in front of their property from high to low water mark." Although not absolutely clear as to whose property was meant by "their property," still, bearing in mind the purpose for which leased, I think it must be considered as the property of the lessee. The same result is reached by grammatical construction, as the last antecedent of the pronoun "their" is "the parties of the second part," the lessee.

This naturally suggests for determination three questions: First. Was the possession under this lease sufficient to constitute adverse possession? Second. Can title be obtained by adverse possession of land held by a municipal corporation for a public purpose? Third. Is the town estopped by the description contained in the lease from claiming title to the premises?

[1] The building in question was used only in the summer time, and was used as stated above for the entertainment of picnic parties, and was not used as a residence or for any purpose indicative of permanence of possession. It was used in the manner described for about 10 or 12 years at most. Then it was abandoned, and apparently no further use made of it. It was exposed to the elements, and was injured by the ice and storms, and was in a dilapidated condition during the balance of the time it remained there. I am inclined to the opinion that use of this character and for this period does not constitute adverse possession. A mere annual entry upon another man's land to cut timber, to feed cattle, to hunt or fish can never give title. Wheeler v. Winn, 53 Pa. 122, 91 Am. Dec. 186. Occupation of a spot five or six years as a fishing place is not a possession sufficient for the statute of limitations. McCullough v. Wall, 4 Rich. (S. C.) 68, 53 Am. Dec. 715. In Wilson v. Blake, 53 Vt. 315, it was held that occupying a sugar place from year to year only for the purpose of making sugar, such place being separated from the homeland by intervening lands owned by others, is not actual or continuous possession. The most that can be claimed under this class of evidence is only possession for a short time each summer for 10 or 12 years. Clearly this is not sufficient. If the camp of the lumberman, the hut of the fisherman or the cabin in the sugar bush cannot when occupied occasionally be considered as adequate adverse possession, then this pavilion used for brief periods in the summer for a few years cannot be so considered.

[2, 3] Second. I think it is clear that a municipal corporation cannot be deprived of the title to lands which it holds for public purposes by adverse possession. I do not think that the extent to which the land is used by the public is very material. It is the purpose for which

the property is held, and not the extent of the use, that must determine the character of the title held by the corporation. This land was reserved for highway purposes, and the evidence shows some use of it for that purpose as far back as the memory of man extends. I do not mean to say that there must not be some use for the purpose for which property is set aside. But, when property is reasonably adapted to the purpose for which it is set aside, is reasonable in amount, and the public avail themselves to some extent of the opportunity to use such property for a highway, it does not matter that such highway is not used as much as some other highways are. Its character as a highway is not changed thereby, and it cannot be affected by any act of an adjoining landowner that would not affect a more traveled highway. This reservation was made at a town meeting by a vote of the "freeholders and commonalty" of the town—those having the ultimate interest in the property. This, I think, constituted at once a dedication and acceptance. If this land is part of a highway, then the permanent occupation of it by inclosure or cultivation is manifestly inconsistent with the right of passage of the traveling public, and no matter how long continued can certainly never ripen into a title as against the public. Bliss v. Johnson, 94 N. Y. 241. This is true no matter how long continued, and even if such occupation is acquiesced in. Driggs v. Phillips, 103 N. Y. 77, 8 N. E. 514; St. Vincent Orphan Asylum v. City of Troy, 76 N. Y. 108, 32 Am. Rep. 286; Walker v. Caywood, 31 N. Y. 51; Morison v. N. Y. El. R. R. Co., 74 Hun, 398, 26 N. Y. Supp. 641; Kellogg v. Thompson, 66 N. Y. 88.

The title the town held was subject to a trust by reason of such dedication and could not be conveyed in contravention to such trust. Knickerbocker Ice Co. v. Forty-Second St. R. R. Co., 85 App. Div. 530, 540, 83 N. Y. Supp. 469. It has been held, even in those jurisdictions where streets are considered to be subject to the statute, that title by adverse possession cannot be acquired to land which has been dedicated to the public use for a highway. 1 Cyc. 1120. My conclusion, therefore, is that this land was dedicated to the public for use as a highway, that the public had used it as occasion required, that thereby it became a public highway in use as such, and no adverse possession, no matter how long continued, would ripen into title.

[4] As to the question of estoppel. My opinion is that estoppel does not apply to actions of public officials in matters like descriptions in instruments by which land is described as bounded by land of some other person. The same trustees or other trustees may afterward deny the ownership of such other person and assert ownership of such property in the corporation which they represent. I think no example of such estoppel against a corporation can be found based upon an admission as to title in a description. The kind of act to which estoppel applies is an affirmative act. For instance, if the trustees of the plaintiff declared that the rent upon one of its leases had been paid and, relying upon such statement, some one took an assignment of such lease, the corporation would not be permitted afterward to deny such payment or avoid the lease upon the ground of nonpayment. The act must be something within the scope of their authority,

and must be a positive affirmative act, and not an inference drawn from some other act. I am therefore of the opinion that the plaintiff is not estopped by reason of any recitals in leases made by it.

There is still another class of evidence which is of some importance—that is, as to the washing away of the bank or cliff—the apparent contention of the defendant being that the strip of land originally reserved at the foot of the cliffs has been lost by erosion. While the evidence shows that at times this bank has washed down to some extent, still I do not think it is of such character as would warrant the court in holding that the reservation at the foot of the cliff has all washed away.

The defendant argues that the proof does not show that a legal highway existed upon the premises within the adjudicated cases. I consider this, in so far as plaintiff's direct title under its patent is concerned, as immaterial. If plaintiff owned this land and did not convey it—in other words, reserved it for highway purposes—the fact that such purpose was or was not accomplished would not in any way affect plaintiff's title to the land except as I have hereinbefore stated in relation to adverse possession. The only other effect that the reservation "for highways" possibly could have upon the title that a reservation without a statement of the purpose of the reservation would not, and I suggest it with considerable hesitation, would be to create a movable freehold in the land so that the town's title would not be lost by erosion. Their boundary would be carried westward pari passu by the advance of the sea. Trustees of East Hampton v. Kirk, 84 N. Y. 215–218, 38 Am. Rep. 505.

If the town had conveyed the land to high-water mark and had reserved a right of way immediately above and adjoining high-water mark, I think there can be no doubt that the right so reserved would have been ambulatory in its character, and would have advanced or receded as the shore was affected by accretion or erosion. It, therefore, is a question, to my mind, whether the purpose for which that reservation was made did not impress itself upon the title so that it became movable in its character. The reservation was for a specific purpose, and all questions as to movable title and adverse possession should be viewed in the light of this purpose. These grants of the upland undoubtedly were intended to convey everything except just so much as was essential for a highway, and the town undoubtedly was willing that the upland owner should use this beach in any way not inconsistent with its use for a highway. The upland owner would be entitled to access to the water and to build a dock of a temporary character. City of Buffalo v. D., L. & W. R. R. Co., 190 N. Y. 96, 82 N. E. 513, 16 L. R. A. (N. S.) 506; Trustees of Brookhaven v. Smith, 188 N. Y. 74, 80 N. E. 665, 9 L. R. A. (N. S.) 336. These views necessarily lead to the conclusion that the plaintiff is entitled to recover. The amount of damage done to the plaintiff is not very clearly established, but I think that the proof fairly shows plaintiff was damaged in at least the amount of $50. Let judgment be entered for plaintiff for possession of the land in question and for $50 damages.

Judgment for plaintiff.