John Van Voobhis, J.
The action is brought to compel the determination of a claim to real property under article 15 of the Beal Property Law. Plaintiff owns a parcel of land in the Town of Greece, Monroe County, New York, on the southerly side of the State highway known as Bidge Boad. In 1937 the State laid a new pavement in Bidge Boad, and in so doing widened the travelled portion of the road. Plaintiff contends that the property lines of the highway coincide with the outside edges of the 20-foot wide macadam pavement that existed there before the State laid its concrete pavement in 1937. The center line of the highway according to the plaintiff is the same course pursued by the center line of the macadam. The State locates the center line 10 feet southerly (toward plaintiff’s premises) from where it is placed by the plaintiff, and also contends that the highway easement is 99 feet wide. The controversy therefore revolves around two essential questions in dispute: (1) How wide is Bidge Boad, and (2) Where is the center line of Bidge Boad located upon the land? The second amended complaint alleges in effect that neither plaintiff nor his predecessors in title granted an easement for a public right of way over anything other than the 20 feet formerly occupied by the macadam pavement.
The second amended complaint, hereinafter referred to as the complaint, alleges that defendant has trespassed upon the land of the plaintiff over his entire frontage for a distance of 41 feet: that is to say, 41 feet from the southerly edge of the old macadam pavement, which plaintiff contends marks the boundary of the highway easement, and which the State claims is the center line thereof. This trespass is alleged to have been committed by grading operations in connection with the laying of the new pavement, and by the removal of gasoline pumps in front of plaintiff’s premises adjacent to the old roadway. Although trespass is alleged, the action is not brought for trespass, and the action might need to be dismissed upon the ground that plaintiff has an adequate remedy at law were it not for the second cause of action which states that defendant has unjustly claimed or might unjustly claim 8.5 feet more than the 41 feet already occupied for highway purposes. That, it is asserted, is sufficient to give rise to an equitable right of action to determine a claim to real property under article 15 of the Beal Property Law. The basis on which plaintiff contends that an adverse claim has been or might be made by the State is the filing of a map embodying the State’s recent survey *686 of this highway in the Rochester office of the District Engineer of the New York State Department of Public Works attached to the highway repair contract under which the improvements to the Ridge Road were undertaken at the point in question in 1937. This is the State map which locates the center line of the highway easement and shows the easement to be 99 feet wide with the southerly line intersecting plaintiff’s garage. It is, in a certain sense, a public record, and manifestly evidences a claim on the part of the State that the highway is of the width and in the location shown upon this map. The action therefore resolves itself into one to determine title to this disputed strip 8.5 feet in depth lying between 41 and 49.5 feet from the southerly edge of the old macadam which corresponds to the center line as claimed by the State. (See surveyor’s map annexed to the complaint.) As incidental to deciding upon the title to this 8.5-foot strip, it will be necessary to decide concerning the 41-foot strip between it and the center of the highway.
The defendant has moved under rule 113 of the Rules of Civil Practice for summary judgment dismissing the complaint. Such a motion is authorized by this rule to be maintained if the defenses are founded upon facts established prima facie by documentary evidence or official record. (Lederer v. Wise Shoe Co., 276 N. Y. 459.) Ridge Road was first established by chapter 135 of the Laws of 1806, which appointed commissioners “to explore and lay out a public road of at least six rods [99 feet] wide, from the termination of the road now laid from the village of Salina to or near the falls on Genesee river, to Lewiston, on Niagara river ’ ’ and further directed that when the road shall have been laid out, it shall be the duty of the said commissioners to file a map and precise description in the office of the Clerk of Genesee County. In 1815 (L. 1815, ch. 31) the Legislature authorized and empowered new commissioners ‘1 to review and make such alterations in the state road leading from the falls on Genesee River to Lewiston, as they in their judgment shall deem beneficial to the public travel,” directing the said commissioners to cause an accurate map of said road to be made and filed with the field notes of the survey in the State Comptroller’s office and in the offices of the Clerks of the Counties of Genesee and Niagara as well as of the towns through which the road runs. This act also provided for the assessment and payment of all damages sustained in consequence of any alterations to said road. Thirty-seven years later (L. 1852, ch. 88) commissioners again were appointed, three for each county, “ to survey and establish so much and such part of said *687 highway as is situated within their county, six rods wide, on the route or survey made and established by Philetus Swift and Caleb Hopkins, in pursuance of ’ ’ chapter 31 of the Laws of 1815, “ except where the lines of said highway as surveyed by said Swift and Hopkins cannot be ascertained, and also excepting where, in the judgment of said commissioners, the interest and convenience of the public would be promoted by varying from said line, or in establishing a new one; and in case said commissioners shall be unable to ascertain the lines of said highway as surveyed and established by said Swift and Hopkins, or shall be of the opinion that the public interest and convenience would be best promoted by varying therefrom, they are hereby authorized to vary therefrom and establish such new line as will, in their judgment, best promote the interest of the public, having proper regard to the interest of the owners of the adjoining lands”. The 1852 act further provided that “if in varying from said survey and establishing said new line, and in making said highway at such places, six rods wide, land owned by any person shall be taken which shall not be within the limits of the survey of said Swift and Hopkins, and not within the limits of the highway as now used (considering the same six rods wide,) the owner of such land thus taken shall be entitled to his damages therefor” in the same manner as if the Commissioners of Highways of the town had legally laid out the highway. Stone monuments were directed to be established by the several Commissioners through each county and a map ordered to be filed in the offices of the County Clerks, together with a correct description of the highway with courses and distances. Section 4 of this act provided that all encroachments should be removed except that fences may be permitted to stand or project three feet within said highway and that any building standing therein at the time of the adoption of the act may be allowed to remain ‘ ‘ together with such yard in front thereof, as said commissioners may allow, providing it will not interfere with the travel of said highway. ’ ’ Section 5 establishes procedure for the removal of encroachments.
There is no proof before the court that maps were filed pursuant to the surveys directed by the said acts of the Legislature adopted in 1806 or 1815. The moving papers set forth a certified copy of a map on file in the Monroe County Clerk’s office which recites that it was made and filed by the Commissioners appointed by the act of 1852. The statute of 1852 supplements and to some extent supersedes the earlier acts, and it is thought that the failure to file maps under the acts of 1806 and 1815 does not affect the situation. The map of 1852 *688 does not state that the single line run by courses and distances is intended to be the center of the road, but that is presumed unless something appears on the record of the Commissioners to show that such was not their intention. (Smith v. Ess, 125 N. Y. S. 450, 453, affd. 157 App. Div. 943; People ex rel. Hawver v. Commissioners of Highways of Redhook, 13 Wend. 310.) The location of the highway thus stated could be plotted with accuracy by a surveyor. Perhaps it was not well monumented at the time so that its location might easily be known in the neighborhood. However that may have been, in 1879 the Highway Commissioners of the Town of Greece made and filed in the Town Clerk’s office what they described as a resurvey of the Ridge Road reciting that the road ‘ ‘ surveyed, established and recorded by commissioners in 1852 under and in pursuance of Ch. 88 of the Laws of 1852 but not sufficiently described ’ ’ has been “ used as a public highway for twenty years last past and more.” This document states that the said Town Highway Commissioners “ do further order that said road be and the same hereby is as ascertained and described” according to courses and distances therein set forth and adds that ‘ ‘ the line above described be the center of the said road, and that said road be of the width of six rods. ’ ’ Power was given to the Town Highway Commissioners under the Revised Statutes of 1829 (vol. 1, ch. XVI, tit. 1, art. I, § 1, subd. 3) “To cause such of the roads used as highways, as shall have been laid out but not sufficiently described, and such as shall have been used for twenty years but not recorded, to be ascertained, described, and entered of record in the town clerk’s office The Town Highway Commissioners were not thereby empowered to change the course of the highway. They could clarify what were the boundaries established by the statutes before enumerated. This survey of 1879 is a part of the moving papers labeled Exhibit 4. If it were demonstrated that the Town Highway Commissioners deviated from the State survey of 1852, the latter must control, otherwise it may be assumed that the 1879 survey ascertained and defined the boundaries of the earlier road as the Revised Statutes provided. No deviation has been shown; on the contrary, the evidence tends to indicate that the two coincide, although in the absence of evidence of divergence between them the Town Highway Commissioners’ survey is accepted as declaratory of the location established under chapter 88 of the Laws of 1852.
It is plain from the foregoing documentary evidence (if it were not a fact sufficiently well known to be the subject of judicial notice) that Ridge Road was opened and used by the *689 public as a highway at an early date in the history of western New York. The recitals in these acts, as well as the survey by the Town Highway Commissioners, are enough to show that it was a travelled road. The moving papers do not indicate at what width it was used for traffic, but the statutes of 1806 and 1852, as well as the survey by the Town Highway Commissioners in 1879, all refer to it as a six-rod road, which is the same dimension as the 99 feet referred to on surveyor’s maps of more recent date. Where a road has obtained its character as a public highway by user, its width is determined by that at which it has been improved by the public authorities. (People v. Sutherland, 252 N. Y. 86.) It is otherwise where the highway has been laid out under a statute or dedication which defines the width. In Walker v. Caywood (31 N. Y. 51, 63-64) the court stated: “ The road as an entirety has been opened and has been constantly in use as a public highway from the date of the record to the present time. Simply it has not at all places been opened for its whole width. If a highway could lose its legal character from such a cause, it is probable that very few of the roads laid out in the early settlement of the State would now exist as lawful roads. This road, though now passing through a village of sufficient population to be erected into a municipality, would long since have lost its legal existence by the neglect of the adjacent land owners to remove their fences where they encroached upon the four rods; and, so far as I can see, any person might, upon that position, lawfully fence it up, without incurring any penalty. But the argument is not that the road has altogether lost its legal character by the omission to open it to its proper width, but that it has been curtailed in its proportions, and become of irregular and varying width; that its sides, which were defined by straight lines, have become crooked and wavering. I do not think this position is sound. If a road or way be established by prescription or user, as most of the highways in England are, the public use defines the extent of the easement, and so of roads by express or implied dedication, but the highways in the central and western part of this State have generally been established by public authority, and the evidence of their extent and boundaries is contained in the public records. The public use for the purposes of travel rarely corresponds precisely with their boundaries as fixed by the record by which they are laid out and the statute applicable to the case. But the proprietors of the adjacent lands have it in their power to ascertain the limits of the road, and it is their fault if they erect their fences upon lands which have been legally appropriated for public use. The plaintiff in this ease *690 is chargeable with knoiuledge of the position of the center line of the road, and he knew that by statute it must be four rods wide [italics supplied]. He neglected to remove Ms fence to the line of the road, and for a long course of years no notice was taken of his omission, and we may presume that neither travelers or the public, during the greater part of this time, suffered any practical inconvenience. There was a sufficient roadway for ordinary purposes. But in process of time a village has grown up, where but a few years ago there was a wilderness. It has now become important that the limits of the highways, which have become village streets, should be defined. Can the plaintiff set up the delay of the public officers in not sooner enforcing their rights? I think not.” (Mangam v. Village of Sing Sing, 26 App. Div. 464, 468, affd. on opinion below 164 N. Y. 560.)
The answering affidavits disclose a situation in this case similar to that in Walker v. Caywood (supra). The wide concrete thoroughfare of today took the place of a 20-foot macadam pavement which in its time supplanted a dirt road. The Legislature in 1806 foresaw that a 99-foot right of way should be acquired and its judgment in this respect was ratified by the Legislature of 1852. Plaintiff’s two answering affidavits by John Fetzner show that the brick building on plaintiff’s lot used as a garage was erected in 1891 where a frame blacksmith shop had stood since 1873. In those days the appearance of the Ridge Road was different from what it is today. Perhaps the boundaries of the road, although ascertainable from the State survey of 1852, were not so well known as after the survey by the Town Highway Commissioners in 1879. That may have been true when the frame blacksmith shop was constructed in 1873. It could hardly have been true when the present building was erected after the blacksmith shop had burned in 1891. In any event highways of a width designated by statute or dedication deed that have been opened and made passable by the public authorities throughout their length (even though actually worked at less than full width) are deemed to have been continued at full width. When a highway is once shown to exist, it is presumed to continue until it is shown to exist no longer. (City of Cohoes v. President, etc., Delaware & Hudson Canal Co., 134 N. Y. 397, 407.) It is well established by decisions of the Court of Appeals that if land is part of a highway then the permanent occupation of it by abutting property owners is inconsistent with the right of passage of the traveling public and no matter how long continued cannot ripen into a title as against the public. (Driggs v. Phillips, 103 N. Y. 77; St. Vincent Female *691 Orphan Asylum v. City of Troy, 76 N. Y. 108; Bliss v. Johnson, 94 N. Y. 235, 241; Town of Brookhaven v. Dyett Sand-Lime Brick Co., 75 Misc. 310, 313, 314; Mangam v. Village of Sing Sing, supra; Walker v. Caywood, supra.) “ The rule laid down in Peckham v. Henderson, 27 Barb. 207, that an encroachment not amounting to an obstruction cannot be abated as a public nuisance, is not in harmony with Driggs v. Phillips, 103 N. Y. [77], 79, 8 N. E. 514.” (Bayles v. Roe, 52 Hun 613, opinion in 5 N. Y. S. 279, 280.) No triable issue is raised by those portions of the answering affidavits submitted by plaintiff sworn to by residents of long standing in the neighborhood stating that the term “ Ridge Road ” in the speech of people in the vicinity had reference merely to the travelled portion of the highway 20 feet wide. That could not narrow the width of a thoroughfare established at 99 feet under act of the Legislature.
No question is or can be raised in this action whether the proper predecessor in title of plaintiff was paid for the acquirement from him of the highway easement. It is sufficient that the acts of 1815 and 1852 made provision for compensation for the taking of the property. An owner of land, over which a highway is laid out, has no right to obstruct it, although the damages sustained by reason of the laying out and opening of such highway have neither been paid nor assessed. (Chapman v. Gates, 54 N. Y. 132, 143 et seq.)
Defendant has succeeded upon this motion in breaking down the plaintiff’s contention that the State was mistaken in acting on the theory that Ridge Road was 99 feet wide. So much at least appears from the documentary evidence. Neither can the theory of adverse possession avail the plaintiff. It remains to be considered whether defendant has also established the absence of a triable issue concerning the location upon the land of the public highway by demonstrating at what particular place the southern boundary of the road crosses the plaintiff’s land. To determine that involves deciding where the center line of Ridge Road is located with relation to plaintiff’s property.
The complaint has defined and limited the controversy upon this aspect of the case by the map annexed thereto and marked Exhibit 2 that has been mentioned above. This map read with the complaint shows where plaintiff claims the center line of the Ridge Road to be with respect to plaintiff’s property and with respect to the center line as claimed by the State. Plaintiff has located the center line in the middle of the travelled portion of the road before its improvement in 1937. That line, according to the map attached to the complaint, runs parallel to the center line of the highway as surveyed by the State and 10 feet north *692 erly thereof. It necessarily follows that plaintiff thus locates the south boundary of the highway 10 feet northerly from where it is claimed to be by the State, provided that the width of the road is 99 feet which is the fact. The gasoline pumps that have been removed and all but 1.5 feet in depth of the area which has been occupied and graded by the State lies within the highway, regardless of whether the center line be as located by the plaintiff or by the defendant. Once the road has been determined to be 99 feet wide, it cannot be contested that the State is entitled to at least 39.5 feet (% of 99 feet minus 10) on plaintiff’s side of the center line plotted according to the State survey. Whether the highway extends to 49.5 feet south of the center line according to the State survey depends upon whether plaintiff or the State is correct in the location of the center line.
The documentary evidence produced by the State and incorporated in its moving affidavits establishes that the center line of Ridge Road is according to the State survey.
The first item to be considered is the map filed in the Monroe County Clerk’s office April 6, 1925. The description by metes and bounds in plaintiff’s deed exactly conforms to the angles, distances and starting point set forth upon this map, which was prepared, according to his certification by H. A. Herrick, surveyor, on March 27, 1925, for Franklin and Esther Parrish, owners. Plaintiff took title from the Parrishes March 31, 1925, four days after the map was made but six days before it was filed in the County Clerk’s office. Apparently the map was prepared for the purpose of drawing the deed. It shows the highway, according to the scale, to be 99 feet wide with plaintiff’s garage extending 8 feet into the road. Obviously, if this map is correct, plaintiff has no cause of action. Plaintiff has not attempted to contradict the accuracy of the survey, but contends that the map has not been proven by common-law evidence, and, therefore, that defendant has failed to sustain its defense prima facie, which must be done before it can have summary judgment dismissing the complaint. It is true that this map is not accompanied by a surveyor’s affidavit testifying to its correctness, and that it is not a document sufficiently ancient to prove itself. The next inquiry is whether this map has become binding upon the plaintiff by being adopted into the chain of title or proclaimed as an admission against interest by a former owner of the realty before parting with the title. If reference to the map had been made in the deed to plaintiff that would end the action without further discussion. Even if not mentioned in the deed, it would have the force of legal evidence as an admission against interest provided that it was *693 assented to by the Parrishes themselves before transferring the title to plaintiff. (Chadwick v. Fonner, 69 N. Y. 404.) It would also have constituted an implied dedication for highway purposes accepted by the public authorities through the improvement of the street. (People v. Underhill, 144 N. Y. 316.) Plaintiff denies that he knew of the existence of this map when he acquired title, says that he first learned of it a year and one half later when he applied for a mortgage, and contends that there is nothing indicating that it was adopted and made the act of the Parrishes until filing upon April 6, 1925, which was after they had transferred title to the plaintiff and at a time when they could no longer dedicate any part of the street for highway purposes or make admissions against interest that would be binding upon the plaintiff. Plaintiff broadly intimates that his grantors concealed the map from him so that he would not know before he bought the property that the garage encroached upon the highway.
It is unnecessary to decide whether the preparation and filing of the Herrick map at the instance of the Parrishes bound the plaintiff inasmuch as plaintiff has himself incorporated the essential features of it in a map which he has caused to be prepared by another surveyor and which is made a part of his complaint, which has already been referred to. It is called Exhibit 2, and the complaint alleges that it sets forth plaintiff’s premises. The latter map fixes the location of the rear and side lines of the lot, and defines this part of the controversy by showing the front line in two places, both where the State has located it, and also where the plaintiff claims it to be in the center line of the old macadam pavement 10 feet north of where the State has located it. A careful examination of this map demonstrates that the plaintiff’s contention with respect to the center line of the highway cannot be correct. If the center line were in the middle of the old macadam pavement, plaintiff’s lot would have 10 feet more depth, than the description in his deed calls for. The deed locates the rear line 234.76 feet south from the center line of the road wherever the latter may be. The map annexed to the complaint plots the rear line that distance back from the center line as located by the State survey. If the center line of the Ridge Road be where plaintiff claims it" is, then according to his deed his rear line must be run 234.76 feet southerly therefrom and parallel thereto. The map attached to the complaint shows the rear line 244.76 feet from the center of the old macadam, thus allowing to the plaintiff 10 feet more in depth than he could be entitled to under any theory. If the *694 lot is 10 feet north of where the State has ascertained it, the plaintiff’s rear line must be 10 feet north of where his surveyor has placed it.
What has occurred is evidently that plaintiff’s surveyor has either used the measurements of the Herrick map, which plaintiff would repudiate, or else has found the Herrick map to be correct by taking observations and measurements of his own. In any event, it shows the same encroachment of the brick garage on the highway. The outside dimensions of the lot are identical. It even indicates the starting point of the description contained in the deed, which is placed in the center line of the highway as claimed by the State rather than by the plaintiff. In summary, this map, coupled with the allegations of the complaint, shows irrespective of the width of the highway that plaintiff claims everything which he would be entitled to if the State survey were correct plus 10 feet more carved out of the highway. It is easy to understand how plaintiff feels aggrieved at being told that a portion of the land which he has occupied these many years is subject to a highway easement, and that the structures erected thereon must be removed if the needs of the public so require. Nevertheless his claim resolves itself into the assertion that he is entitled to utilize more land than was conveyed to him by his deed, and that he has acquired a vested right in part of the highway on account of having appropriated it for so long a time to his own purposes.
If the thought occurs to mind that this map could be interpreted to mean that if the center line of the road should be held to be where plaintiff claims it is then the whole lot should be transposed 10 feet to the north, surrendering 10 feet at the rear to some undesignated owner who seems never to have urged his claim, such a construction would be conclusively eliminated by other facts hereinafter mentioned.
Defendant has submitted maps and deeds older than the Herrick map pertaining to plaintiff’s premises and other parcels of land in the immediate vicinity. These fit together like the pieces of a jigsaw puzzle, and the picture which emerges when the fragments are assembled confirms the State’s survey. In answer plaintiff contents himself with asserting that when people in the community have been accustomed to speak of the Ridge Road they meant the old macadam or dirt road 20 feet wide which was used by the traveling public, and that the middle of the travelled portion thereof lay 10 feet north of the center line according to the present State survey. It has been shown above why these contentions' are untenable. No affidavits or *695 other documents have been submitted by the plaintiff otherwise questioning the accuracy of any of the maps submitted by defendant or the conclusions drawn from the assembling of the old records. Instead of refuting the accuracy of the defendant’s documentary evidence, plaintiff attacks its value as common-law evidence. The Herrick map, it is true, has not been filed long enough to be admissible as an ancient document or under section 389-a of the Civil Practice Act. The contrary is true of the maps Exhibits 6, 7 and 8, the first of which was filed in the Monroe County Clerk’s office in 1902, and the last in 1921. The rule respecting ancient documents is that a record or document which is found to be more than 30 years of age and which is proven to have come from proper custody and is itself free from any indication of fraud or invalidity proves itself. (Fairchild v. Union Ferry Co. of N. Y. & Brooklyn, 121 Misc. 513, affd. 212 App. Div. 823, affd. 240 N. Y. 666.) Section 389-a of the Civil Practice Act expressly provides that “ all maps, surveys and official records, which shall have been on record or on file in the office of either the register, county clerk, surrogate or any court of record of any county of the state over a period of twenty years or upwards prior to such trial, shall be presumptive evidence of their contents, and shall be receivable in evidence as such upon any trial in any of the courts of this state in any controversy pending therein between any parties. ’ ’ That is sufficient to constitute all three of these maps and surveys evidence of their contents. A full discussion of each of these documents would extend an already long opinion entirely out of bounds. All of these maps, of varying dates, show Bidge Boad of the width claimed by defendant. No map has been submitted by either side which shows it to be otherwise. Mention must be made of the important fact that the point of beginning under the description in plaintiff’s deed is “in the center line of the Bidge Boad 297.87 feet easterly from a square bolt marking the intersection of the west line of Lot 95 with the center line of the Bidge Boad.” One of these maps (Exhibit 8) shows the square bolt that is referred to at the intersection of the west line of town lot 95 with the center line of the Bidge Boad. There can be only one course 297.87 feet long leading from the said iron bolt to the northwest corner of plaintiff’s lot. That course necessarily designates the center line of the Bidge Boad, to which plaintiff is committed by his deed as marking his northerly boundary. It becomes material to discover whether the center line of the highway as claimed by the plaintiff or as claimed by the defendant measures 297.87 feet between *696 plaintiff’s westerly boundary and the said iron bolt. The solution is supplied by the plaintiff’s map annexed to the complaint which designates the center line according to the State survey as being the one which measures 297.87 feet. That being true, it follows that the State must have located the center line correctly since that is the only line of that length which could be drawn between those two points. If the place of beginning in the description in plaintiff’s deed were assumed to be in the center line of the old macadam pavement, which is indicated on plaintiff’s map as being 10 feet northerly from the center line as surveyed by the State, and parallel thereto, a moment’s reflection will reveal that the distance from plaintiff’s westerly boundary to the west line of town lot 95 along such an assumed center line would be substantially greater than along the line as located by the State. That results inevitably from the fact that plaintiff’s westerly boundary does not run parallel to the west line of town lot 95. Plaintiff’s deed makes the side lines of his lot run at right angles to Eidge Eoad which intersects the west line of lot 95 at an acute angle (Exhibit 8 shows this angle to be 77 degrees and 42 minutes). Using this angle for computation shows that the distance would be 2 feet longer than the 297.87 feet if the center line were to be plotted, as plaintiff claims it should be 10 feet to the northward of where shown on the State survey. Even so, it would not be tied in with the square bolt mentioned in the deed and set forth upon Exhibit 8. This proves that plaintiff’s lot, as shown upon the map annexed to the complaint, could not be transposed 10 feet to the north without altering the distance indicated by plaintiff’s surveyor and called for by his deed along the center line of the road to the west line of lot 95.
The maps received under section 389-a of the Civil Practice Act, likewise show the course in an easterly and westerly direction of the north line of lot 96, which is the south line of lot 95. This line intersects the center of Eidge Eoad 13.68 feet westerly from plaintiff’s northwest corner as appears from the description in plaintiff’s deed and from the description in the deed to John Fetzner (Exhibit 15), which is referred to in plaintiff’s deed. The map (Exhibit 8) indicates the angle of intersection between the north line of lot 96 and the center line of the road to be 12 degrees and 28 minutes and shows that the north line of lot 96 passes immediately to the north of and almost intersects the northwest corner of plaintiff’s lot. If the front line of plaintiff’s lot were moved 10 feet to the north, a portion of his land would then be in lot 95, whereas the description recites that it is wholly in lot 96.
*697 If the action went to trial, the location of the highway according to the State survey could probably be' demonstrated in ampler detail. The point at issue now is not whether a title examiner would be convinced that evidence exists which could be produced at a trial that would enable defendant to win, but whether enough evidence is contained in the moving papers to establish a defense prima facie. The court is satisfied that such evidence has been brought before it, especially when read in conjunction with plaintiff’s own map which tends to confirm rather than to put in issue the correctness of the defendant’s survey. It is clear that the plaintiff could not succeed upon a trial and no useful purpose would be served by ordering a trial to be conducted.
Having come to this conclusion, it is unnecessary to discuss at length defendant’s objection that plaintiff, if entitled to any relief, has an adequate remedy at law. That must be true insofar as the action is brought to oust the defendant from possession of so much of the easement as it has already occupied. The statutory action to compel the determination of a claim to real property will not lie unless the conditions prescribed in the statute are fulfilled, one of which is that plaintiff shall have been in possession of the disputed lands, tenements or hereditaments (in this instance that includes both the dominant and the servient tenement) for one year next preceding the commencement of the action. (Real Property Law, § 501; Vanderveer Crossings v. Rapalje, 133 App. Div. 203.) Plaintiff must have been in possession exclusive of any occupation by the State under the easement. The complaint alleges the contrary concerning the front 41 feet of the premises. Ejectment would be the proper remedy rather than an action of this nature whether brought under the statute or as the old action of quia timet. (Moores v. Townshend, 102 N. Y. 387, 393.) An action to determine a claim to real property under the statute is held to be maintainable with respect to the 8.5 feet of plaintiff’s property referred to in plaintiff’s second cause of action, which the State has not yet taken possession of for highway purposes. Concerning that it is held that defendant is entitled to summary judgment establishing the easement claimed for the Ridge Road, without passing upon whether the State is immune from this type of suit.
It is not intended to decide that the State must require plaintiff immediately to remove the encroachment of his garage building from the highway. It is merely decided that the State has the right to compel removal of this encroachment and to prevent any other use and occupation by him of his land within *698 the highway limits whenever in the judgment of the duly constituted State authorities such occupation is inconsistent with the use of the street by the public for highway purposes. Let summary judgment be entered accordingly.