JULIUS FRANKFATER et al., Respondents, *v.* STATE OF NEW YORK, Appellant. (Claim No. 36184.)

Third Department, December 28, 1962.

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon* and *Paxton Blair* of counsel), for appellant.

*Rosen & Rosen (George H. Rosen* of counsel), for respondents.

REYNOLDS, J. Involved here is a five-foot-wide strip in Sullivan County which the State proposes to utilize to widen Route 17B. The property in question was retained by respondents from a larger piece of property they are in the process of subdividing for development. While the deed recites as the purpose of the reservation to lay water lines, in fact the water lines have been laid to the rear of the property and respondents now claim the real reason for the reservation was so that a wall could be erected between Route 17B and the development to prevent commercial use of property abutting the road. The State contends that it owns the property in question, tracing its title to the Newburgh and Cochecton Turnpike Company chartered in 1801 (L. 1801, ch. 36). It maintains that the center line of Route 17B is the center line of the old turnpike; that the original taking for the turnpike was six rods in width and that, therefore, respondents have no title to the property in dispute. It is our opinion that the State derived title to the turnpike as constituted under the 1801 charter and that the original taking was for a road six rods

in width. On the question of the State's acquisition of title the legislative enactment of 1838 (L. 1838, ch. 262) providing that whenever a turnpike corporation was dissolved or the road discontinued the road was to become a public highway is dispositive. The record indicates that the Newburgh and Cochecton Company abandoned the property no earlier than 1865. At this point title passed to the State pursuant to the 1838 enactment. Additionally, there is no proof that the road was not continuously in operation under legislative ægis from its inception through 1911 when the State assumed control of the road as a State highway (*City of Cohoes* v. *D. & H. Canal Co.*, 134 N. Y. 397), and in fact the opposite would actually appear to be the case. As to the width of the taking involved, it is undisputed that the 1801 legislation establishing the turnpike authorized a maximum taking of up to six rods in width and a minimum of four rods. While the general rule is that whenever a statute prescribes the maximum and minimum widths proof of actual use will be determinative of the extent of the taking (25 Am. Jur., Highways, § 36, p. 360; 76 A. L. R. 2d 535, Highways — Width and Boundaries, § 11, p. 557); a review of the evidence here, especially the reports of the Commissioners of Appraisal, indicates that a six-rod width was appropriated and paid for. It is undisputed that if the original taking was but the minimal four rods prescribed by the statute, it would include the strip in controversy. Respondents assert that since only three rods were actually utilized, the 1911 State takeover contract plans indicate only a three-rod road, the taking map filed pursuant to section 30 of the Highway Law indicated respondents owned the property involved and the State paid other people on the basis of the taking map, the State is estopped from asserting title to more than a three-rod width. Even assuming that respondents can establish that they have suffered a legal detriment as a result of the State's action upon which estoppel would lie (cf. 6 N. Y. Jur., Boundaries, § 61 *et seq.* and § 75 *et seq.*) we find no authority that would sanction the use of the theory of estoppel to deprive the sovereign of land conferred to it by statute. Nor even if the prescribed 40-year period and the other elements necessary for adverse possession were established would title ripen here since the effect would be inconsistent with the public right to passage over a public highway (*Beisham* v. *People,* 26 Misc 2d 684, 690).

The most vexing aspect of this case is whether the evidence advanced by the State is adequate to prove that the old turnpike laid out under the statute of 1801 follows the same course as does the present 17B. If this is established it is clear that the State

must prevail (*Schillawski* v. *State of New York*, 9 N Y 2d 235). In *Schillawski* the Court of Appeals dispelled all arguments that use rather than the statute determines the width and that failure to improve the entire width taken constitutes an abandonment of the unimproved portion. To establish its position the State first produced a survey made in 1806 which established the center line of the turnpike along what is now respondents' land. Next the State introduced a witness who plotted that old survey to the same scale as was used in the 1911 contract plans and also to the scale in the 1955 contract plans connected to the present taking. When overlays of the 1806 survey as replotted were placed on the 1911 and 1955 maps the center line of the road was almost exactly the same. The court below, despite this evidence, found that the State had not dispelled the possibility that the road might have been relocated due to inconsistencies in the testimony of the State's witnesses. While admittedly testimony by the State's own witnesses indicating that using the description in certain deeds the center line would be other than as presently constituted is some evidence to substantiate respondents' contention of the possibility of a center line deviation, we do not find these discrepancies sufficient to warrant a disregard of the vivid evidence portrayed by the overlays especially since the preparation of the overlays was not dependent on these descriptions. Respondents' argument that the State did not prove that the strip in question abutted the old turnpike must fall on the same evidence, for if the present Route 17B abuts the strip and 17B follows the route of the old turnpike then the old turnpike must also have abutted the same land. On the basis of the present record we find that the State has established title to the property here involved.

Since claimants, however, entered this trial without notice that the State claimed title to the strip in question, in the interests of justice a new trial should be granted to allow claimants to produce any further evidence bearing on the issue.

The judgment should be reversed and a new trial granted, without costs.

BERGAN, P. J., COON, GIBSON and TAYLOR, JJ., concur.

Judgment reversed, on the law and the facts, and a new trial granted, without costs.